STATE *vs.* THOMAS S. MURPHY.

May Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, START and THOMPSON, JJ.

Opinion filed October 12, 1898.

*Chancery May Abate a Public Nuisance.*—Our State constitution, c. 2, § 5, by providing that the legislature might erect a court of chancery "with such powers as shall appear for the interest of the commonwealth," authorized the erection of a court of chancery with power to abate public nuisances.

*Injunction—Contempt.*—A court of chancery having received power to abate a public nuisance has authority to enjoin its commission and its maintenance, and consequently to punish for disobedience of its order.

*Declaration of Right, Art. 10—Jury Trial.*—A proceeding to abate a nuisance relates only to the property, and is to be distinguished from a prosecution for the crime of maintaining a nuisance. So a proceeding against one for violating an injunction against maintaining a nuisance, is an incident of the chancery suit, not a prosecution for a criminal offence, and the constitutional provision for a jury trial does not apply.

CHANCERY. Came on for hearing upon demurrer to the bill at the March term, 1898, Chittenden county, before *Thompson*, Chancellor, who rendered a *pro-forma* decree overruling the demurrer and making the temporary injunction perpetual. The defendant appealed.

The complaint alleged that from the 5th day of April, 1897, to the date of the complaint the defendant had kept, maintained and used as a place of resort a certain building in the city of Burlington, particularly described, in which building during all that time intoxicating liquor had been kept by the defendant with intent then and there to sell, furnish and give away the same without authority, to the common nuisance of the good people of the State and contrary to the form of the statute; whereby said building had become a common nuisance, and ought to be abated and enjoined; and praying for a subpœna and temporary and perpetual injunctions. The defendant was cited to show cause why a temporary injunction should not be issued, and having appeared, and hearing having been had, the temporary injunction was granted on the 24th day of April, 1897, by *Munson*, Chancellor. The complaint was returnable at the September term, 1897. The temporary injunction prohibited the defendant, his attorneys, servants, and agents from keeping and maintaining or using the premises described for the keeping of intoxicating liquor with intent or purpose of selling, furnishing or giving away the same without authority.

*Seneca Haselton*, for the defendant, presented an elaborate

brief to the point that for one hundred and fifty years before the adoption of our constitution of 1786 no injunction against a public nuisance had been granted by any court of chancery in England; but as the decision of the court is made without reference to this question, it is omitted here. The remainder of the brief may be summarized as follows:

The legislature of Vermont at its first session, that of 1778, adopted the common law, and in 1782 declared the common law of England, so far as not repugnant to the constitution and statutes of Vermont, to be the law of the State. The constitution of 1786 contained the provision, "that when any issue of fact proper for the cognizance of a jury is joined in a court of law, the parties have a right to a trial by jury which ought to be held sacred." This provision of the constitution is a sacred guaranty of the right of trial by jury, in all cases and upon all issues, so far as the right is in accordance with the usage and practice existing at the time of its adoption; and in view of the then existing state of the law absolutely secured that right to any person charged in any court in any proceeding whatever with the offence of maintaining a public nuisance.

Section 5 of our frame of government provided that a future legislature might erect a court of chancery with such powers as are usually exercised by that court or as should appear for the interest of the commonwealth. Even if this section gives the legislature authority to confer upon courts of equity jurisdiction over public nuisances as such, this jurisdiction can neither be granted nor exercised in such a manner as to infringe the right of trial by jury. *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 376; *Powers* v. *Raymond*, 137 Mass 483; *Tabor* v. *Cook*, 15 Mich. 322; *State* v. *Peterson*, 41 Vt. 504.

But the statute of Vermont under which this information is brought not only undertakes to confer jurisdiction upon a court of equity without providing for a trial by jury, but expressly commands that "such suits, actions and

proceedings shall be entered, conducted, heard and determined in accordance with the usual course of proceedings in said court." V. S. 4528. The usual course of proceedings in chancery is determined in this State by the rules promulgated by the supreme court under legislative authority and do not permit of or in any way recognize a trial by jury. In only one case in the history of chancery proceedings in this State have issues been sent to a jury, viz: in *Adams* v. *Soule*, 33 Vt. 538. See *Briggs* v. *Shaw*, 15 Vt. 78, 785.

But even if the court of chancery might send an issue to a jury the verdict of the jury would be advisory merely, and therefore the constitutional right would not be preserved. *North Penn. Coal Co.* v. *Snowden*, 42 Pa. St. 488: 82 Am. Dec. 530; *Carleton* v. *Rugg*, 149 Mass. 550; *State* v. *Currier*, 66 N. H. 622.

Thus far the discussion has proceeded without reference to the question of whether this is a civil or a criminal proceeding. It should, however, be considered a prosecution for a criminal offence within the meaning of Art. 10 of the declaration of rights. The meaning of the phrase, "prosecution for criminal offences," is shown by contemporaneous legislative enactments to be synonymous with the phrase, "matters of a criminal nature." Slade's State Papers, 352, 452, 453.

In Massachusetts the writ of *supplicavit* was held to be a criminal proceeding. *Adams* v. *Adams*, 100 Mass. 365. See also *Deloohery* v. *State*, 27 Ind. 521. A case of the highest importance is *Boyd* v. *U. S.*, 116 U. S. 616, in which an information for the forfeiture of 35 cases of plate glass was held to be a criminal proceeding. See also *Counselman* v. *Hitchcock*, 142 U. S. 547.

It is immaterial that the offence has been created by legislation since the adoption of the constitution. *Plympton* v. *Somerset*, 33 Vt. 283; *Wynehamer* v. *People*, 13 N. Y. 378, 426; *State* v. *Peterson*, 41 Vt. 504.

Another provision of the statute which is clearly unconstitutional is that providing a hard-and-fast rule of punishment for contempt.   It is for the judiciary, not for the legislature to settle the amount of fines in cases of contempt.   *Re Cooper,* 32 Vt. 253, 257; *Blackstone* in the Lord Mayor of London's case, 3 Wilson 204: *ex parte Robinson* 19 Wall. 505 ; *Cartwright's Case,* 114 Mass. 230, 238; *State* v. *Frew,* 49 Am. Rep. 257.

What the legislature effects, if it effects anything, by providing that a specific act of contempt shall be punished by a specific punishment, is to create a substantial criminal offense triable like all other criminal offenses.   Of this character is V. S. 5072.

The act under consideration undertakes to provide that on a charge of maintaining a liquor nuisance a person may be summoned before a chancellor and required to answer under oath, and be tried without a jury, and that evidence of reputation may be received, and that on the first conviction he shall be admonished or enjoined by the court, and on a second and every subsequent conviction shall be fined not less than $500, nor more than $1000, or imprisoned not more than six months, or by both such fine and imprisonment in the discretion of the chancellor.   As opposed to the constitutionality of such legislation see the position of the dissenting judges in *Carleton* v. *Rugg, supra.* A recent decision in Iowa is suggestive of what will naturally follow the recognition of the constitutionality of such a statute.   *McGlassons* v. *Johnson,* 53 N. W. 267. Blackstone's eulogium upon the trial by jury is exceedingly appropriate in this case.   4 Black. Com. 350.

*Cushman & Mower* also for the defendant.

In granting injunctions the court operates *in personam.* Kerr on Injunctions \*p. 6; *McDonogh* v. *Calloway,* 7 Rob. (La.) 442; Spelling, Ex. Relief, § 1: Pom. Eq. Juris. § 1360. An injunction does not run with the land.   Kerr on Inj. \*p.

7; *Attorney General* v. *Birmingham, etc., Board,* 50 L. J. Ch. 786 : Spelling, Ex. Relief, § 1126.

The mere fact that liquor is kept in a given place does not render that place a common nuisance. The question of nuisance depends upon the intent with which the liquor is kept. *Fisher* v. *McGirr,* 1 Gray 36 ; *Carleton* v. *Rugg,* 149 Mass. 550. The only real or professed effect of an injunction therefore would be to restrain the persons named from again committing the crime in the place described.

We had already statutes dealing effectually with the place where liquors were kept. Acts 1876, No. 33 ; Acts 1880, No. 14 ; R. L. 3837 ; Acts 1888, No. 46. It is apparent from these previous enactments that the purpose of the legislature in passing the act in question was not to strengthen the law touching the closing of the nuisance, but to circumvent trial by jury in a matter which the statute made a crime and which wholly depends upon the intent of the defendant touching the use to be made of liquors kept in the place complained of. V. S. 4528 adds strength to this inference.

By Chancery Rule 20 the defendant must answer under oath, and if the answer is insufficient, he may be committed under Rule 25, § 4. This case is therefore squarely within the doctrine of *Boyd* v. *U. S.,* 116 U. S. 616. *State* v. *Int. Liquor,* 55 Vt. 82, does not militate against this position, because it professes to deal exclusively with the property, and expressly declares that no penalty can be imposed upon the claimant, and no issue joined proper for the cognizance of a jury. But the language of the opinion in that case is not in keeping with the law of the State, for intoxicating liquor is not "outlawed" nor is it "a public enemy that when discovered the law smites." The statute recognized and still recognizes property rights in liquor and makes the sale under certain conditions legal. V. S. 4445, 4463.

The action is criminal in its nature. *Brown* v. *Walker,* 161 U. S. 616 ; *State* v. *Nowell,* 58 N. H. 314 ; *State* v.

*Greenway*, 92 Iowa 472 : 61 N. W. 239.   Other incidents of
this proceeding which show that it is of a criminal and not
a civil nature, are that it is brought by the State's attorney
upon his oath of office, and subscribed by him in his official
capacity, and that there is no recognizance for costs, nor
any verification by a solicitor that it is brought according
to the precedents in chancery as provided by Rule 8.

*R. E. Brown*, State's attorney, and *W. L. Burnap*, for the
State.

The complaint sets forth the existence of a nuisance
within the terms of V. S. 4512.   The application for
temporary injunction falls within the terms of V. S. 4525
and 4526, and such injunction was granted.   V. S. 4529
provides a method by which evidence sufficient to sustain
proceedings for injunction may be adduced.

This proceeding is merely a civil one for the abatement of
a public nuisance and involves no punishment or penalty.
The business sought to be enjoined is injurious alike to
public welfare and public morals, and that it is indictable at
common law as a public nuisance will hardly be
controverted.   *McClean* v. *State*, 49 N. J. L. 471 : 9 Atl. 681.

Even if the acts prohibited by the statute do not
constitute a nuisance *per se*, it is well settled that whatever
is declared by a valid statute to be a nuisance is deemed in
law to be a nuisance in fact.   *Carleton* v. *Rugg*, 5 L. R. A.
193.

The Mugler and Ziebold cases, 123 U. S. 623, arising under
the Kansas statutes and passed upon by the U. S. supreme
court under the 14th amendment, resulted in the vindication
of a law similar to our own.   The question again came up
for consideration in *Re Debbs*, 158 U. S. 564, where a
remedy in equity was invoked against interference with
property rights amounting to a nuisance, and the positions
sought to be established by the State in the present case
were maintained.

Intent is not an element in nuisance cases.   The intent of the defendant in doing that which is now forbidden longer to do is entirely immaterial under this statute.   V. S. 4529.

The defendant was deprived of no property or property rights, but only forbidden to misuse his property to the injury of the public.

*State* v. *Currier*, 19 Atl. 1000, arose under a New Hampshire statute which contained no provision for a temporary injunction and provided no way in which the existence of the nuisance might be made to appear, nor that the injunction might issue if the fact were established to the satisfaction of the chancellor.   In that case the existence of the nuisance was denied, while in the case at bar the existence of the facts is admitted by the demurrer.   Thus that case as well as *Carleton* v. *Rugg*, *supra*, is easily distinguishable from the present.

The objection that the defendant by being compelled to answer is obliged to furnish evidence against himself in a criminal prosecution, is answered by the suggestion that the present is not a criminal but a civil proceeding.   True the defendant must answer, but if the defense be a good one the bill must be dismissed, and if a truthful answer will not aid him, he may be silent, and will thereby be deprived of nothing except the right to use his property for an unlawful purpose.   How then can it be said that he has been wronged ?

To the objection that the law prescribes a specific punishment for contempt, we answer that when the violation of an order consists in a repetition or continuance of a forbidden act, it is within the legislative authority to measure the punishment as well as the judicial power. See *Mugler* v. *Kansas*, 123 U. S. 656.

TAFT, J.   This is a proceeding in equity under the provisions of V. S. c. 187, to abate a nuisance.   V. S. 4512 makes certain places where intoxicating liquor is sold, furnished or

given away, or kept for that purpose, a common nuisance and requires that the same shall be abated or enjoined as afterwards provided. Sections 4524–6 provide that an action may be prosecuted in the court of chancery, to abate and perpetually enjoin the same, and that any person violating the terms of an injunction granted in such proceedings shall be punished as for contempt by fine or imprisonment or both. A subsequent provision authorizes a temporary injunction, if the chancellor is satisfied that a nuisance actually exists or is being maintained.

This proceeding is to abate the nuisance described in the complaint, and the complaint is met with a general demurrer. That the premises described in the complaint are a public nuisance is admitted by the demurrer.

The first point made is that the court of chancery has no jurisdiction to abate a public nuisance. Whether equity has such power depends upon the authority given the legislature by the constitution of this State to create a court of chancery. There was no power given the legislature by the first constitution of this State to create one. Certain equity powers were given the common law courts. Chap. II., § 21. Upon the revision of the constitution in 1786 an amendment was added in these words, being § 5, chap. II.: "A future legislature may, when they shall consider the same to be expedient and necessary, erect a court of chancery with such powers as are usually exercised by that court or as shall appear for the interest of the commonwealth,—provided they do not constitute themselves the judges of the said court." This provision has remained intact until the present time. The legislature by the constitution of 1786 was thus authorized to erect "a court of chancery with such powers as are usually exercised by that court." It may be conceded as contended by respondent's counsel that at the time of the adoption of the constitution in 1786 a court of chancery did not have, and had not prior to that time exercised, the power

to abate a public nuisance. It is unnecessary to pass upon that question, for that power is given in the succeeding clause in which it is expressly stated that a court of chancery may be erected with such powers as are above stated and "as shall appear for the interest of the commonwealth." Under this clause the legislature is authorized to establish a court of chancery, and can endow it with power to abate a public nuisance if it appears that it is for the interest of the commonweal. If it has power to abate a public nuisance, it has power to enjoin its commission and its maintenance.

The violation of an injunction constitutes a familiar instance of contempt. It may be laid down as a general rule that when the court has jurisdiction of the parties, and the original power to grant the injunction, its violation is a contempt of the court which issued it. The power of a court to make an order carries with it the equal power to punish for the disobedience of the order.

The respondent contends that the statute is in conflict with provisions of the constitution of this State, particularly Article X. of the declaration of rights, which provides, "That in all prosecutions for criminal offences, a person hath a right to . . . a speedy public trial by an impartial jury of his country; . . . nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers." This claim is made, disregarding the distinction between a proceeding to abate a nuisance, which relates simply to the property which in its use constitutes the nuisance, and a prosecution of the respondent for the crime of maintaining it. The proceedings are different. A proceeding against the respondent for violating the injunction would be no more a criminal proceeding than would one against him for violating an injunction in a civil proceeding, or in a proceeding in reference to a private nuisance.

The reasoning of the supreme court of Massachusetts

in *Carlton* v. *Rugg*, 149 Mass. 550, is much in point. *Knowlton*, J., speaking of the proceeding to abate a nuisance, and one against the respondent for the crime of maintaining one, says: "The latter is conducted under the provisions of the criminal law, and deals only with the person who has violated the law. The former is governed by rules which relate to property, and it is only connected with persons through the property in which they may be interested."

The acts committed by a person in violating an injunction may constitute a crime, but the fact that a person is guilty of an offence against the criminal law and subject to punishment under it—in any prosecution for which he is entitled to the protection of the constitutional provision— is no bar to a proceeding against him before the chancellor or the judge granting the injunction, for a violation of it. To illustrate this point take the case of a libellee in a divorce cause who is enjoined from interfering with the custody and personal liberty of his wife, the libellant. In case he commit a grievous assault on her, he is guilty, under the criminal law, of the offence, and is, in a prosecution for such offence, entitled to a jury trial,—the judgment of his peers; but will any one contend that he cannot be proceeded against before the authority granting the injunction for his contempt in violating it, or would any lawyer advise that an adjudication of guilt of either offence could be successfully pleaded in bar of the other? We think not. Nothing further need be said upon this branch of the case than to refer to the reasoning of, and the cases cited by, *Brewer*, J., in *Re Debs*, 158 U. S. 564.

> *The decree overruling the demurrer and adjudging the bill sufficient was correct. The same is affirmed and cause remanded.*