# Napro Development Corporation v. Town of Berlin and Town of Berlin v. Napro Development Corporation

[376 A.2d 342]

No. 261-76

Present: Barney, C.J., Daley, and Billings, JJ., and Smith and Keyser, JJ. (Ret.), both specially assigned

Opinion Filed   June 7, 1977

*Richard C. Blum,* Burlington, for Napro.

*Robert J. Kurrle,* Montpelier, for Town.

**Billings, J.**   This is a consolidated appeal from a judgment order of the Washington Superior Court in two joined civil actions concerning a so-called adult bookstore in the Town of Berlin. The judgment order below granted plaintiff Napro Development Corporation's (Napro) motion for summary judgment in a V.R.C.P. 75 complaint to prevent enforcement of an abatement order of the Town of Berlin Board of Health. In the second action, it granted defendant Napro's motion to dismiss the Town of Berlin's complaint seeking a permanent injunction to enforce the abatement order.

Napro Development Corporation is a Vermont corporation doing business as Twin City News on leased premises in a shopping complex located on U.S. Route 302 in the Town of Berlin. This commercial enterprise has been characterized by the parties as an adult bookstore. On April 27, 1976, the Board of Selectmen of the Town of Berlin, sitting as the local board of health (18 V.S.A. § 610), held a properly warned public meeting to investigate the nature of the operations of this commercial enterprise. After examination of the stock in trade and the

mode of conducting business, the Board determined that the stock in trade was sexually explicit and that the business operation constituted an unhealthful condition. The Board issued the following abatement order dated April 29, 1976:

The Local Board of Health of the Town of Berlin, Vermont hereby issues the following Order of Abatement directed to Napro Development Corporation, Inc., a Vermont Corporation, doing business as Twin City News and located on land and premises owned by Northern Terminal, Inc., a Vermont Corporation and specifically located on, at or near route 302, Berlin, Vermont. Said Order of Abatement is and shall be as follows:

1. Napro Development Corporation, Inc. is ordered to cease and desist its business operation at the aforesaid location as an adult book store, the same constituting an unhealthful condition.

2. Napro Development Corporation, Inc. is specifically ordered to abate the sale, distribution and displaying of sexually explicit material including films, magazines, photographs, drawings, appliances, sound recordings and any and all other printed or visual matter however reproduced including sado-masochistic portrayals.

3. This Order of Abatement to cease said business operation as heretofore enumerated shall be completed by Napro Development Corporation, Inc. at the above referenced Berlin, Vermont location eighteen (18) days from April 27, 1976, and specifically to mean on or before May 15, 1976.

4. Failure to terminate and abate the unhealthful conditions of sale, distribution or displaying of the materials hereinbefore enumerated in this Order, the same constituting unhealthful conditions pursuant to Title 18, Section 610 of the Vermont Statutes Annotated, as amended, will result in the Town of Berlin, Vermont, through its appropriate constituted local authority, seeking enforcement of this Order of Abatement through judicial relief in an appropriate Court of Law of the State of Vermont.

On May 7, 1976, Napro filed a complaint for vacation of the abatement order and moved for a stay of the order. On May 17,

1976, the town filed a civil complaint in which it alleged that the entire stock in trade sold by Napro at Twin City News was obscene and constituted a public nuisance per se. On August 27, 1976, the Washington Superior Court issued its judgment order and the town filed a timely appeal.

## I.

Appellee Napro has filed a motion to strike that portion of the appellant's brief which contains a detailed list of materials alleged to have been purchased at the appellee's place of business. Included in the pertinent portion of the appellant's brief is a detailed description of what those materials are purported to contain, as well as alleged quotations from those materials. Further, appellee has incorporated in that motion a request to the Court to ignore any of those materials offered by the appellant as purported exhibits on this appeal.

While the materials listed in the appellant's brief were also listed in Count 12 of the complaint filed by the town, our review of the record does not reveal that those materials, submitted in a locked metal box by the appellant, numbered Exhibit #1, were ever admitted below. This Court will not examine the materials submitted as appellant's Exhibit #1, and we grant the motion to strike, disregarding that portion of the appellant's brief. The materials and descriptions are not properly before us because they are not part of the record, and they have not and will not be considered on review. V.R.A.P. 10; *First Vermont Bank and Trust Co.* v. *Village of Poultney*, 134 Vt. 28, 31, 349 A.2d 722 (1975).

## II.

The legal theory of the town is as follows. The Board of Selectmen of a town sitting as a local board of health may abate nuisances affecting the public health and destroy, prevent or remove unhealthful conditions. 18 V.S.A. § 610. They may seek to prevent or remove public nuisances by civil remedy in the superior court through injunctions or orders of abatement. 24 V.S.A. § 2121. The Board is endowed with a statutory power to define what constitutes a public nuisance, 24 V.S.A. § 2291(14), a statute which must be read in conjunction with the abatement power pursuant to 18 V.S.A. § 610. In addition, it argues that obscenity, a catch-all phrase for lewd and indecent writings and

actions, was recognized at common law as a common law crime, hence it constitutes a public nuisance. The common law has been adopted by Vermont where it is not in conflict with statutory law. *E.B. & A.C. Whiting Co.* v. *City of Burlington*, 106 Vt. 446, 459, 175 A. 35 (1934). They conclude that the power exercised by the town in regard to this subject matter is not in conflict with 13 V.S.A. § 2801 et seq., which provides both civil and criminal procedures for dealing with obscenity.

The town urges us to include within the term "public nuisance" obscene materials in various formats so that commerce in these materials may be prevented by the use of abatement procedures against public nuisances. It argues: first, that obscenity was encompassed within the common law concept of public nuisance; secondly, that the United States Supreme Court has approved of the use in this manner of the civil remedies of injunction and abatement; and thirdly, that other states have approved of these remedies to prevent commerce in obscenity.

We believe that the concept of public nuisance is vague and amorphous, and we are cautious to employ it in circumstances where its application might intrude in the arena of speech and expression protected by both the First and Fourteenth Amendments of the United States Constitution and the Vermont Constitution, Chapter I, Article 13. While it is clear that obscenity and commerce in it are not protected expression, *Paris Adult Theater I* v. *Slaton*, 413 U.S. 49, 53, 93 S.Ct. 2628, 37 L.Ed.2d 446, *reh. denied*, 414 U.S. 881 (1973), it is also true that books and films are entitled to protection until there is a judicial determination that an item is obscene as prohibited by state law which meets the constitutional standard set forth in *Miller* v. *California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[1] *Carroll* v. *President and Commissioners of Princess Anne*, 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968);

---

[1]The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest, (citations omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. [413 U.S. at 24.]

*Bantam Books, Inc.* v. *Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Lovell* v. *City of Griffin,* 303 U.S. 444, 451-52, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

The *Miller* standard is a hotly debated legal topic, and its application in the context of crucial First Amendment rights is a difficult one. For example, Mr. Justice Stewart remarked, "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description [the then Roth test]; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it...." *Jacobellis* v. *Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (concurring opinion). The very evolution of the constitutional obscenity standard is testament to the difficulty of this subject. *Roth* v. *United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Memoirs* v. *Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); *Miller* v. *California, supra.*

The late Dean William Prosser discusses the concept of nuisance in a law review article. Prosser, *Private Action for Public Nuisance,* 52 Va.L.Rev. 997 (1966). He describes it as a French word meaning harm, which entered into English law at an early date as a tort against land. Contemporaneously, a second similar yet distinct principle evolved, that of public nuisance, an infringement of the rights of the crown, hence a crime. Thus, the hallmark of nuisance was interference with some right. By degrees, the classes of offenses recognized as common nuisances expanded. Basically, they included the doing of acts not permitted by law and the failure to discharge a legal duty required by law thereby inconveniencing the public in its common rights. *Id.* at 998-99. Thus, to be considered a public nuisance, an activity must disrupt the comfort and convenience of the general public by affecting some general interest.

The town argues that identical Arizona and California public nuisance statutes (A.R.S. § 13-601; Cal. Civ. Code § 3479) should be considered generally to state the common law rule on nuisance. To constitute a public nuisance under these statutes, an activity must be injurious to health, or indecent, or offensive to the senses, or an obstruction of the free use of property, or an interference with the comfortable enjoyment of life or property of a considerable number of persons. These statutes have been used to abate as public nuisances the showing of films and the sale of written material alleged to be obscene. *Cactus Corp.* v.

*State ex rel. Murphy,* 14 Ariz. App. 38, 480 P.2d 375 (1971); *People ex rel. Busch* v. *Projection Room Theater,* 17 Cal. 3d 42, 550 P.2d 600, 130 Cal. Rptr. 328 (1976).

What would be the result if we adopted the town's argument that these statutes are a model for the elements constituting a public nuisance under Vermont common law? Although the town alleges that this commerce in sexually explicit materials is an unhealthful condition, it is reasonable to suppose that unhealthful refers to physical health, *i.e.,* disease. See cases cited at 52 Va. L.Rev. 997, 1000 (1966). An offense to the senses could mean either olfactory or personal sensibilities. However, restriction of expression for reasons of personal taste or propriety does not comport with the constitutional standard which protects expression. No allegation is made of interference with the free use of property. Another element is the comfortable enjoyment of life or property. While we are mindful that lack of obtrusiveness of commerce in obscenity or its limitation to consenting adults does not give it constitutional immunity because of local interest in the regulation of local commerce and public accommodation, *Paris Adult Theater I* v. *Slaton, supra,* 413 U.S. at 57, we also believe that the concept of public nuisance is intended only to govern conduct thrust upon those who find it repugnant. What remains is the term "indecent". Even if we were to find that obscenity was included in the term "indecent", we believe that the central basis of the public nuisance concept is interference, and the fact that even some significant portion of the public disapproves of purportedly indecent behavior cannot raise that private conduct to a level sufficient to constitute the requisite interference.

In this regard we approve the comments of this Court in *Woodstock Burying Ground Association* v. *Hager,* 68 Vt. 488, 489, 35 A. 431 (1896):

> The law will not declare a thing a nusans [sic] because it is unsightly and disfigured nor because it is not in a proper and suitable condition, nor because it is unpleasant to the eye and a violation of the rules of propriety and good taste, nor because the property of another is rendered less valuable. No fanciful notions are recognized. The law does not cater to men's tastes, nor consult their convenience

merely. It guards and upholds their material rights and shields them from unwarrantable invasion.

Public nuisance was a common law crime. Both broad and specific criminal statutes were enacted in this country which generally included these common law crimes. These statutes may not have defined nuisance or may have done so in a vague and general manner. From this position, the town argues that the absence of inclusion of obscenity in the nuisance statutes is no bar to its inclusion by implication. We are not convinced. The town has not demonstrated any link between other Vermont statutes concerning obscenity and public nuisance. Nor has the town convincingly demonstrated how, in the absence of statutory support, commerce in sexually explicit materials conforms with the concept of public nuisance, which requires interference with some common public right and permits abatement of the condition which causes injury to the public. Vermont was apparently the first state to have an obscenity law. See *Paris Adult Theater I* v. *Slaton, supra,* 413 U.S. at 104 (Brennan, J., dissenting); Laws of Vermont, 1824, Chap. XXXII, No. 1, § 23.

Attempts to find obscenity encompassed in the concept of public nuisance in Vermont decisional law do not bear fruit. Among the types of activities adjudged public nuisances have been the following: *State* v. *Woodbury,* 67 Vt. 602, 32 A. 495 (1894) (slaughterhouse); *State* v. *Murphy,* 71 Vt. 127, 41 A. 1037 (1898) (keeping and sale of liquor); *City of Montpelier* v. *McMahon,* 85 Vt. 275, 81 A. 977 (1911) (purpresture); *Hazen* v. *Perkins,* 92 Vt. 414, 105 A. 249 (1918) (interfering with the water level of a lake).

The town next cites the approval of the United States Supreme Court for the use of civil remedies to control commerce in obscenity.

Georgia case law permits a civil injunction of the exhibition of obscene materials. [citations omitted]. While this procedure is civil in nature, and does not directly involve the state criminal statute proscribing exhibition of obscene material, the Georgia case law permitting civil injunction does adopt the definition of "obscene materials" used by the criminal statute. Today, in *Miller* v. *California, supra,* we have sought to clarify the constitutional definition of obscene material subject to

regulation by the States, and we vacate and remand this case for reconsideration in light of *Miller.*

> *This is not to be read as disapproval of the Georgia civil procedure employed in this case, assuming the use of a constitutionally acceptable standard for determining what is unprotected by the First Amendment.* On the contrary, such a procedure provides an exhibitor or purveyor of materials the best possible notice, prior to any criminal indictments, as to whether the materials are unprotected by the First Amendment and subject to state regulation. [*Paris Adult Theater I* v. *Slaton, supra,* 413 U.S. at 54-55. (emphasis added); (footnotes omitted).]

The situation at bar is distinguishable from *Paris.* Here, there is no comparable statute of either a civil or criminal nature which includes obscenity. Further, the Court states, "It should be clear from the outset that we do not undertake to tell the States what they must do, but rather to define the area in which they may chart their own course...." *Id.* at 53-54.

Likewise, the town cites us to a list of cases found in *People ex rel. Busch* v. *Projection Room Theater, supra.*[2] Each of these modern cases deals with a specific obscenity statute or a public nuisance statute containing language regarding indecency or immorality. Our research has not revealed any case which involved a statutory public nuisance claim and alleged obscenity, and which case did not also include statutory language concerning indecency or immorality.

Other courts have reached contrary conclusions when dealing with a state public nuisance statute which specifically dealt with materials of an obscene nature. *Commonwealth* v. *MacDonald,* 464 Pa. 435, 347 A.2d 290 (1975); *Grove Press Inc.* v. *City of Philadelphia,* 418 F.2d 82 (3d Cir. 1969).

In *Grove,* the court stated:

---

[2]*Bloss* v. *Paris Township,* 380 Mich. 466, 157 N.W.2d 260 (1968); *Cactus Corp.* v. *State ex rel. Murphy, supra; New Rivieria Arts Theatre* v. *State ex rel. Davis,* 219 Tenn. 652, 412 S.W.2d 890 (1967); *Paris Adult Theater I* v. *Slaton, supra; State ex rel. Ewing* v. *"Without a Stitch",* 37 Ohio St.2d 95, 307 N.E.2d 911 (1974); *State ex rel. Little Beaver Theater, Inc.* v. *Tobin,* 258 So.2d 30 (Fla. D. Ct. App. 1972); *State ex rel. Murphy* v. *Morley,* 63 N.M. 267, 317 P.2d 317 (1957).

What is encountered with the sprawling doctrine of public nuisance is an attempt to restrict First Amendment rights by means analogous to those under "a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application." Cantwell v. Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213 (1940).

The common law of public nuisance may be a perfectly valid method by which to implement a state's police power in certain defined circumstances where, for example, it is used to restrain that which is prohibited by other constitutionally appropriate standards. It may not be used, however, both to define the standards of protected speech and to serve as the vehicle for its restraint. [*Id.* at 88.]

In the exercise of its police powers, the State has the authority to prevent or abate nuisances, subject to constitutional limitations, and the General Assembly has the authority to declare what shall be deemed nuisances and to provide for their suppression. Whatever is declared a nuisance must be so in fact, *i.e.*, the merger of the concept in a concrete activity. *Vermont Salvage Corp.* v. *Village of St. Johnsbury*, 113 Vt. 341, 354, 34 A.2d 188 (1943). Because neither has been done, we are requested to encompass obscenity within the concept of public nuisance by implication, which we will not do.

Our next task is to review the abatement order. In its description of the objectionable items as "sexually explicit" rather than obscene, the abatement order of the town falls short because it is only obscene materials, as defined in the constitutionally approved standards of the *Miller* test, that are *not* protected. See *Village of Bennington* v. *Hawks*, 100 Vt. 37, 40, 134 A. 638 (1926). Further, there is no standard set forth in the abatement order to ascertain the character of the items, *i.e.*, the *Miller* test. Nor is there a criminal statute from which to draw such a test, since present Vermont law does not include a prohibition of the sale or display of materials of any magnitude of sexual explicitness to adults. Under these circumstances, we are troubled by the fairness of the hearing before the local board of health notwithstanding that the procedures contemplated by the town through its civil complaint would avoid prior restraint entanglement by providing a full

adversary hearing on the question of the nature of the contested items. See *Rabe* v. *Washington*, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258, *reh. denied*, 406 U.S. 911 (1972). The town argues that the *Miller* test can be "poured in"; however, it has not substantiated a basis for that suggested process of inclusion by implication.

In addition, we are concerned by the broad sweep of the abatement order which seeks to foreclose any commercial activity by the business on the basis of its conclusion that the entire stock in trade is either tainted on conclusively presumed objectionable on the basis of a sample of merchandise. The town argues that the merchandise is objectionable, thus commerce in it is an impermissible activity which it seeks to regulate as a nuisance, while denying that its effort is an attempt to "padlock" the establishment or to chill First Amendment rights. Because of our resolution of this appeal on other grounds, we do not reach the procedural due process issues which this theory raises.

We believe that the public nuisance law provides an extraordinary remedy for situations which truly demand one. While we have not reached the appellee's pre-emption argument because of our disposition on other grounds, we are reluctant to create this new variety of public nuisance, particularly in the absence of other statutory support, or to find that the General Assembly intended that the conduct complained of constitutes a public nuisance. As Justice Tobriner stated in his dissent in *People ex rel. Busch* v. *Projection Room Theater, supra*, 550 P.2d at 620, "The sword of public nuisance is a blunt one, admirably designed to curb noxious odors or to quell riots, but ill suited to the delicate sphere of the First Amendment where legal overkill is fatal."

It is clear from our discussion above that neither the common law of public nuisance nor the statutes relied on by the town create the cause of action sought to be invoked to try the issue of obscenity presented here. The judgment order of the Washington Superior Court is affirmed in both actions.

*Judgment affirmed.*