2012 VT 30

In re A.C.

[48 A.3d 595]

No. 11-057

¶ 1. April 19, 2012. Defendant (A.C.), a juvenile, appeals an adjudication of delinquency based on prohibited acts pursuant to 13 V.S.A. § 2632. He raises several evidentiary issues and argues that the evidence was insufficient to support the court's ruling. We affirm.

¶ 2. On the basis of an incident at school, the State filed a delinquency petition alleging that A.C. had engaged in open and gross lewdness and lascivious conduct pursuant to 13 V.S.A. § 2601. The State's case can be summarized as follows. The complaining witness (A.R.), defendant, and a third juvenile (T.W.) went to high school together. On March 18, 2010, A.R. was on her way to science class when A.C. and T.W. cornered her in the hallway. T.W. touched her breasts through her clothing and reached up her skirt and touched her vaginal area outside of her underwear; at the same time, A.C. slid his hand up her skirt and touched her buttocks through her underwear. A.R.

tried to fend off the boys by telling T.W. to let her go and by slapping his hand, and she swung her arm backward to stop A.C. The boys stopped, and A.R. ran into her classroom crying.

¶ 3. The State filed delinquency petitions with respect to both A.C. and T.W. on the basis of this incident. The trial court consolidated the first part of the merits hearings with respect to T.W. and A.C. to take evidence from A.R. and other common witnesses, but then bifurcated the hearings and heard other testimony from additional witnesses, including A.C. himself, separately. On October 19, 2010, the trial court issued its initial decision on the merits, entering an adjudication of delinquency with respect to A.C.

¶ 4. As a result of the State's late disclosure of a recorded police interview with T.W., upon the trial court's invitation, A.C. requested that the court disregard A.C.'s testimony in its entirety as if he had never testified in the case, and made a proffer concerning T.W.'s expected testimony. The trial court agreed to review the evidence in light of the request and to reconsider its findings and conclusions in light of the proffered testimony.

¶ 5. At the disposition hearing on January 18, 2011, the trial court reaffirmed its prior findings except that, on its own motion, it struck the conclusion that the State had proven lewd and lascivious conduct and instead held that the State had established the misdemeanor of prohibited acts. See 13 V.S.A. § 2632. Both parties acquiesced to the court's amended finding. Although defendant challenges the sufficiency of the evidence, he does not appeal the trial court's substitution of a different, lesser charge.[1]

_____

[1] The trial court's sua sponte substitution of an alternate charge at the disposition hearing is unconventional. Because de-

¶ 6. On appeal, A.C. makes several arguments arising from the same constellation of testimony and rulings. In the course of A.R.'s testimony, the State asked A.R. whether, prior to March of 2008, she had "any problems with [A.C.] touching you or doing things." A.C. objected on the ground that the State had failed to provide notice pursuant to Vermont Rule of Criminal Procedure 26 of intent to introduce evidence of prior bad acts. See V.R.F.P. 1 (providing that, with certain exceptions not germane to this appeal, Vermont Rules of Criminal Procedure apply to delinquency proceedings). The trial court overruled the objection, and, in response to the follow-up question, "Any problems with [A.C.]?" A.R. replied, "No."

¶ 7. A.R. testified in the hearing that she *had* been subjected to prior unwanted touching by the other juvenile, T.W. On cross-examination, T.W.'s counsel asked A.R. the following question: "Now, there was some touching going on you indicated, and this involved other people, not just you; is that correct?" The State objected to the question, and during the ensuing discussion with the court T.W.'s counsel explained his goal as follows: "What I'm trying to show, your Honor, is that there was inappropriate, consensual touching going on by many kids at this time." The trial court sustained the State's objection, responding, "It doesn't have anything to do with your client's actions."

¶ 8. A.C.'s counsel did not attempt to question A.R. about the actions of other students. Nor did A.C.'s counsel attempt to question A.R. about any alleged instances in which she engaged in prior consensual conduct involving touching or

fendant did not object below and has not raised the issue on appeal, we do not reach the question of the trial court's authority to substitute an alternate charge at the disposition hearing.

being touched by A.C. or any other student.

¶ 9. During the second part of A.C.'s merits hearing, two witnesses were allowed to testify that A.R. had allegedly told them that she had problems with both T.W. and A.C. inappropriately touching her prior to March 18, 2010. First, the State asked Penelope Gratton, an educator who escorted A.R. to the principal's office following the incident, "What did [A.R.] say at that point?" A.C. objected generally, and the court overruled the objection. Ms. Gratton proceeded to testify that A.R. reported that "the boys had touched her and that was not the first time they had touched her." A.C. did not raise a Criminal Rule 26 objection to this testimony. See V.R.F.P. 1(a)(1) ("The Rules of Criminal Procedure [generally] apply to all delinquency proceedings."). On further questioning by defense counsel and the court itself, Ms. Gratton acknowledged that she had just assumed that the prior instances to which A.R. was referring involved both A.C. and T.W., but A.R. had not actually said that *both* boys were involved in the prior instances.

¶ 10. Assistant Principal Dennis Hill testified that A.R. was fearful about returning to school because she "had alluded to the fact that this wasn't the first time that this contact had been happening with these two boys." A.C. did not object to this statement. In fact, on cross-examination, A.C. proceeded to elicit testimony on that very subject. In particular, A.C. introduced Mr. Hill's prior sworn statement and asked him to confirm that A.R. had previously told him that "as far back as Christmastime, these two boys had been engaging in this activity with her." Mr. Hill responded, "[s]imilar activities."

¶ 11. On the basis of these exchanges, defendant raises several evidentiary issues on appeal. First, defendant alleges that the trial court denied his Sixth Amendment Confrontation Clause right by allowing Ms. Gratton and Mr. Hill to

testify about A.R.'s statements that A.C. and T.W. had previously touched her when A.R. was unavailable to be cross-examined on this testimony.

¶ 12. We need not address whether defendant's legal argument is correct, because the factual predicate for that argument — that A.R. was unavailable — is at odds with the record. Defendant never actually sought to recall A.R. to cross-examine her regarding this testimony, and there is no evidence in the record that A.R. would have been unavailable to testify if he had called her to cross-examine her in connection with the hearsay testimony of Ms. Gratton and Mr. Hill. Defendant predicates his claim that A.R. was unavailable to testify on this subject on the trial court's ruling disallowing a question by T.W.'s counsel designed to elicit testimony "that there was inappropriate, consensual touching going on by many kids at this time."

¶ 13. In the evidentiary ruling relied upon by defendant, the trial court concluded that the alleged misconduct of others did not have anything to do with T.W.'s (or, by extension, A.C.'s) own conduct at issue in this case. This ruling by the trial court cannot fairly be read as a blanket exclusion of any evidence relating to prior instances of consensual or nonconsensual conduct between A.C. and A.R.[2] We do not know how the trial court

would have ruled if A.C. had sought to cross-examine A.R. specifically about her prior conduct with A.C. because A.C. never attempted to do so. For that reason, we cannot credit A.C.'s assertion that A.R. was unavailable to cross-examine on these issues such that Mr. Hill's and Ms. Gratton's testimony triggered Confrontation Clause issues.

¶ 14. Defendant acknowledges that in the absence of an objection to the Gratton and Hill testimony, other than a hearsay objection with respect to Ms. Gratton's testimony, we review for plain error. *State v. Butson*, 2008 VT 134, ¶ 15, 185 Vt. 189, 969 A.2d 89. In the face of this record, the court's admission of the Gratton and Hill testimony did not constitute error "so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *Id.* (quotation omitted).

¶ 15. Second, defendant argues that the court "erroneously denied A.C. the right to present a complete and adequate defense by precluding him from questioning the complaining witness about prior voluntary and consensual participation in playful touching after allowing the state to elicit the same." As noted above, the court did not preclude A.C. from questioning A.R. about prior voluntary and consensual participation in playful touching, either before or after the Hill and Gratton testimony. The court disallowed broad questioning designed to show "that there was inappropriate, consensual touching going on by many kids at this time." A.C. never attempted to question A.R. more specifically about her own prior voluntary and consensual participation in such conduct. Nor did T.W. during the joint portion of A.C.'s trial. Accordingly, we have no ruling to review.

¶ 16. Third, defendant argues that the court erroneously allowed the State to

---

[2] For this reason, we do not share defendant's view of the trial court's ruling as an application of the rape-shield law. Although the back-and-forth concerning T.W.'s question on cross-examination included a reference to "the statute," and the rape-shield law was central to other rulings not at issue in this appeal, the court's specific ruling in connection with T.W.'s proffer to the effect that general testimony that many others were engaging in this kind of behavior was not relevant to T.W.'s own case is better understood as a straightforward relevancy

determination. Neither T.W. nor A.C. sharpened the question enough to call for an analysis and ruling under 13 V.S.A. § 3255.

elicit testimony regarding prior uncharged criminal conduct of A.C. in violation of Criminal Rule 26, which requires the State to provide advance notice when it intends to offer evidence of other criminal offenses. The State's question to A.R. in direct examination, to which A.C. objected on the basis of Rule 26, *could have* elicited testimony regarding prior uncharged criminal conduct by A.C., if she had responded differently. But she testified that she did not have prior problems with A.C. touching her. Accordingly, we find no violation of the rule with respect to this testimony.

¶ 17. Defendant did not object on Rule 26 grounds to the testimony of Ms. Gratton and did not object on any ground at all to the testimony of Mr. Hill, so we again review defendant's claim with respect to their testimony on a plain error standard. For the reasons set forth above, we cannot conclude that the admission of either witness's testimony rose to the level of plain error. See *Butson*, 2008 VT 134, ¶ 15 (reversal on plain error appropriate only when there was an error, it was obvious, it affected substantial rights and resulted in prejudice to the defendant, and the error seriously undermined the fairness, integrity, or public reputation of judicial proceedings).[3]

---

[3] We note that with respect to Ms. Gratton's "prior bad acts" testimony, the witness herself, in a colloquy with the court, essentially retracted her testimony that A.R. had specifically implicated both boys in prior bad acts, further undermining the suggestion that admission of her testimony constituted plain error. Moreover, when Mr. Hill offered arguably "prior bad acts" testimony, A.C. not only failed to object, but proceeded to proactively build on his testimony on cross-examination, eliciting more detailed and focused testimony regarding A.R.'s alleged statements to Mr. Hill about prior bad acts.

¶ 18. Finally, defendant challenges the sufficiency of the evidence. The prohibited acts statute reaches, among other things, lewdness. 13 V.S.A. § 2632(a)(8). "Lewdness" is construed to mean "open and gross lewdness." *Id.* § 2631(2). "Open and gross lewdness" has been further defined by this Court to mean lewdness that is "neither disguised nor concealed." *State v. Memoli*, 2011 VT 15, ¶ 33, 189 Vt. 237, 18 A.3d 567 (quotation omitted). In the context of a different criminal statute, 13 V.S.A. § 2602, we have explained that the determination of whether an act is "lewd" for the purposes of that provision "depends on the nature and quality of the contact, judged by community standards of morality and decency in light of all the surrounding circumstances, accompanied by the requisite, specific lewd intent on the part of the defendant." *State v. Squiers*, 2006 VT 26, ¶ 11, 179 Vt. 388, 896 A.2d 80.

¶ 19. In assessing the sufficiency of the evidence, this Court will uphold a judgment unless no credible evidence supports it. We review the evidence in the light most favorable to the State. *State v. Warner*, 151 Vt. 469, 471, 560 A.2d 385, 387 (1989). A trial court's determination "must stand if supported by credible evidence, even though there may be inconsistencies or substantial evidence to the contrary." *State v. Tribble*, 2005 VT 132, ¶ 12, 179 Vt. 235, 892 A.2d 232 (quotation omitted).

¶ 20. A.R. testified at the merits hearing that A.C. and T.W. approached her outside of a science classroom; A.C. approached from behind and T.W. approached from the front. With respect to A.C., A.R. testified that he "went up my skirt touching my butt." A.R. further testified that she "swung [her] arm back . . . to get [A.C.] to stop." The trial court found A.R.'s testimony credible and accurate. Additionally, Mr. Hill testified that A.R. was shaken, distraught, and ashen in color when she was talking to him about

the incident between her, A.C. and T.W. The trial court credited Mr. Hill's testimony.

¶ 21. The trial court found that A.C.'s actions were open in that they were witnessed by A.R., and gross because the act of placing A.C.'s hands under A.R.'s skirt and touching her buttocks through her underwear was patently offensive and known to be patently offensive to any law-abiding person in A.C.'s situation.

¶ 22. The evidence adduced at the merits hearing below supports the conclusion that in the school hallway A.C. reached up A.R.'s skirt and touched A.R.'s buttocks through her underwear, and thus supports the trial court's conclusion that A.C. engaged in prohibited acts.

*Affirmed.*

¶ 23. **Skoglund, J.,** concurring. As the issue was not objected to, or argued on appeal, the majority does not address the sua sponte substitution of alternate charges at the disposition hearing on January 18, 2011. While agreeing with the majority opinion on the merits discussed therein, I write separately to express serious reservations about such unilateral action on behalf of the trial court.

¶ 24. A.C., a juvenile accused of indecent sexual behavior, was adjudicated as a minor in the family division pursuant to Vermont law governing juvenile proceedings. 33 V.S.A. § 5101 et seq. The original merits hearing was conducted on September 29, 2010. On October 19, 2010, the Franklin Family Division's findings and conclusions stated that A.C. did commit the alleged delinquent act — to wit, lewd and lascivious conduct. 13 V.S.A. § 2601. Counsel for A.C. moved to reconsider an earlier motion to dismiss, alleging that the relevant evidence was not available to defendant, although in the possession of the State. The final disposition order — entered on January 18, 2011 — concluded that although the State's case was insufficient to support a finding of lewd and

lascivious conduct, the record did support a finding of a related but lesser delinquent act: prohibited acts. 13 V.S.A. § 2632. The trial court, after the close of evidence and testimony, changed the charges sua sponte to this lesser offense. Neither the State nor the defendant moved for such a substitution.

¶ 25. The decision to substitute charges came after all evidence was disclosed and the prior findings of lewd and lascivious conduct and delinquency were recorded. The issue presented is: how much discretion does a family court judge have to substitute, sua sponte, alternate charges, when the court's findings do not support the original charge?

¶ 26. I start by recognizing what I assume was the good intention of the trial judge to keep alleged juvenile offenders like A.C. in the rehabilitative system. The provisions governing juvenile proceedings found in Title 33 of the Vermont Statutes do not aim to punish. Instead, such special guidelines for youthful offenders provide treatment and supervision for the developing child, while avoiding the stigma of criminal proceedings. See *In re P.M.*, 156 Vt. 303, 310, 592 A.2d 862, 865 (1991); *In re J.S.*, 140 Vt. 458, 468, 438 A.2d 1125, 1129 (1981). Recognizing the special status of juvenile offenders and the compelling interest of rehabilitation in lieu of criminal proceedings is vital to our public policy and our youth.

¶ 27. However, this is still a judicial system, and the ability of a trial judge to substitute alternate charges when the State's charges no longer supported a finding of delinquency I find highly questionable. A defendant is charged, the evidence is presented with respect to that charge, and a decision is made as to whether the State has proven the offense. In juvenile adjudications, like criminal proceedings, the State must meet its burden for each element of the alleged delinquent act. The unique attributes of juvenile adjudications — the considerations

for privacy, rehabilitation, and continuing supervision — do not shift this fundamental burden away from the State. Here, not only did the court change the charge, it failed to specify what prohibited act it found supported by the evidence. Given that § 2632 primarily focuses on prostitution, the only subsection that could possibly apply to the facts of this case is (a)(8), which states that "[a] person shall not . . . [e]ngage in prostitution, lewdness or assignation." From this subsection the court apparently plucked "lewdness," and decided the case on that basis. This is, to put it mildly, a stretch.