*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-293

JULY TERM, 2013

In re I.L., Juvenile } APPEALED FROM:
}
} Superior Court, Franklin Unit,
} Family Division
}
} DOCKET NO. 23-2-12 Frjv

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Juvenile I.L. appeals a family division order finding him delinquent for committing a sexual assault in violation of 13 V.S.A. § 3252(a)(1). On appeal, juvenile argues that the court's conclusions of law were not supported by the evidence because the State failed to prove beyond a reasonable doubt that the victim, K.L., did not consent. We affirm.

Many of the underlying facts are undisputed. At the time of the relevant facts, juvenile was fifteen. He and K.L. met at school and were in an exclusive relationship. For Valentine's Day, the two agreed to spend the night at juvenile's house. K.L.'s mother dropped her off at juvenile's house, where other people were present. In the evening, they were playing video games and listening to music. K.L. fell asleep on the couch and woke up at 2 a.m. to juvenile rubbing her vagina. K.L. went to juvenile's room. After smoking a cigarette, he joined her on the bed. By mutual agreement, they engaged in kissing, cuddling and oral sex.

According to K.L., at this point, juvenile asked if he could put his penis in her vagina, and she said no. He asked why, and K.L. responded that she did not want to have intercourse and then have him not talk to her again. Juvenile asked if she trusted him, and at first she responded in the negative. Juvenile persisted and K.L. explained that they eventually made a "pinky promise" that he would not have sex with her and then never talk to her again. She testified that juvenile then laid her on the bed, and held her forearms. She said she "begged him not to," but he "jammed his penis" into her vagina. K.L. further testified that it hurt, and that it had been important to her not to have intercourse because she had a purity ring that symbolized her commitment to waiting for sex until marriage. Afterwards, juvenile told K.L. that he did not wear a condom and had ejaculated inside her and she was angry at him. Juvenile left the room for a while, and when he returned, the two went to sleep in his bed and told each other they loved each other. K.L. had her phone with her, but did not call anyone. The next morning, K.L.'s friend picked her up. She told her sister and her friends what had happened. She was bleeding and her vagina was swollen. During the day, K.L. received apologetic texts from juvenile. The State also introduced an electronic message from juvenile to K.L. apologizing for that night.

Juvenile testified. His version of the events that evening corresponded to K.L.'s up to a point. He stated that the two made a pinky promise that he would not have sex with K.L. and then not talk with her afterwards. He disagreed with K.L. about what happened next. He testified that there was no time when K.L. told him not to put his penis her vagina. He said that K.L. was angry with him afterwards because he ejaculated inside of her and did not wear a condom. He explained that his later apology to K.L. was for not wearing a condom.

The court issued a written decision. The court found that K.L. begged juvenile not to put his penis in her vagina, and that K.L. did not consent to have intercourse with I.L. Based on those findings, the court concluded that juvenile was delinquent, and a timely notice of appeal followed.

On appeal, juvenile argues that the court's findings of fact are in error regarding the "pinky promise." The court's findings state: "[K.L.] expressed her mistrust of [juvenile], fearing that he would have intercourse with her and never speak to her again. [Juvenile] then made a pinky promise not to put his penis in her vagina and asked her again if she trusted him. [K.L.] said, yes." Juvenile argues that the court misconstrued the evidence by stating that the pinky promise was that he would not put his penis in K.L.'s vagina. According to juvenile, the actual pinky promise was him promising not to have sex with and then ignore K.L. and this proper understanding of the promise suggests that K.L. expected to have sex, but wanted to make sure juvenile would not abandon her afterwards.

Assuming, without necessarily agreeing, that the court inaccurately related the content of the promise, and that juvenile correctly represents K.L.'s testimony that juvenile promised not to ignore her after intercourse, it was not the crux of the case. Accepting juvenile's version of the promise, K.L.'s version of the subsequent events was no less clear: that she did not consent to the intercourse. Whatever the purpose of the pinky promise, the main issue for the trial court was whether K.L. asked juvenile not to put his penis in her vagina.[*] This was the factual discrepancy between the parties. K.L. stated that she asked juvenile not to insert his penis inside her while juvenile testified that she did not object. The court found K.L. more credible on this point,

---

[*] We also note a discrepancy between the transcript's recitation of K.L.'s testimony and the court's findings on whether juvenile told K.L. he would put his penis her vagina. The court found that, after the promise, and "[w]hile lying on top of [K.L.], [juvenile] told her he would do it. [K.L.] begged him not to. He put his penis in her vagina for a short time." (Emphasis added.) The transcript reflects K.L.'s testimony as follows:

> [K.L.]. And we locked pinkies. And then he laid me back down and we were kissing and he had my forearms and—right there. And then he told me he wasn't going to do it.
>
> Q. Do what?
>
> [K.L.]. Put his penis in me. And he was sliding his penis on my vagina, and I begged him not to, and he jammed his penis in me.

(Emphasis added.) Whether the court or the transcript is incorrect, it does not make a difference because K.L. testified and the court believed that K.L. begged juvenile not to penetrate her.

2

finding that K.L. "begged" juvenile to stop, and did not consent. The court did not credit juvenile's testimony that K.L. was only upset afterwards about his failure to wear a condom.

Next, juvenile argues that the State failed to prove that K.L. did not consent to sexual intercourse. Prima facie sufficiency of the evidence in a delinquency proceeding is the same as a criminal case. When faced with such a challenge, this Court will uphold a judgment "unless no credible evidence supports it." In re A.C., 2012 VT 30, ¶ 19, 191 Vt. 615 (mem.). Even where there are inconsistencies or evidence to the contrary exists, the trial court's decision will not be disturbed as long as credible evidence supports it. Id.

Juvenile essentially argues that his version of events was credible whereas K.L.'s testimony that she "begged" juvenile not to put his penis in her vagina is inconsistent with the rest of the evidence. This is insufficient to show that the court's findings lacked evidentiary support. Although juvenile disagrees with the court's view of the evidence, it was up to the court to determine the credibility of the witnesses, and this Court will not reweigh the evidence on appeal. See State v. Hinchliffe, 2009 VT 111, ¶ 22, 186 Vt. 487 (explaining that assessment of credibility and weight to ascribe evidence is for factfinder). Here, K.L.'s testimony was sufficient to establish that she did not consent to intercourse. "[W]here the victim testifies as to all elements of the charges against a defendant, we need only recount the victim's testimony concerning the charges to rebut a claim of error." State v. Brink, 2008 VT 33, ¶ 10, 183 Vt. 603 (mem.) (quotation omitted); see State v. Eaton, 134 Vt. 205, 208 (1976) (holding that victim's testimony of penetration was sufficient to establish that element of charge). Similarly, juvenile's argument that the evidence was in equipoise is without merit. The evidence is not equally matched if the trial court believed K.L.'s version of events, rather than juvenile's. There was adequate evidence to support the delinquency adjudication in this case.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

3