NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 52

No. 2015-007

| | |
|---|---|
| In re K.A., Juvenile | Supreme Court |
| | On Appeal from Superior Court, Caledonia Unit, Family Division |
| | September Term, 2015 |

M. Kathleen Manley, J.

Matthew F. Valerio, Defender General, and Sara Puls, Appellate Defender, Montpelier, for
 Appellant.

Lisa A. Warren, Caledonia County State's Attorney, and Maria L. Byford, Deputy State's
 Attorney, St. Johnsbury, for Appellee.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **SKOGLUND, J.** As an anthropological text, the law reflects the principles a society holds dear and attempts to establish agreed upon community standards of behavior.[*] But over years of legislative enactments, some statutes cease to coexist peacefully with changes in society's mores and may be misused. In this case, K.A.—a twelve-year-old, middle-school boy—committed inappropriate acts outside his school, but he was adjudged delinquent under a statute prohibiting lewd acts relating to prostitution. We reverse.

---

[*] "It is perfectly proper to regard and study the law simply as a great anthropological document." O.W. Holmes, Law in Science and Science in Law, 12 Harv. L. Rev. 443, 444 (1899).

¶ 2. The delinquency hearing established the following undisputed facts. In March 2014, K.A., S.K., and at least six other students were outside playing four square near their school lobby. It was after school, and no adults supervised the students. S.K. (a female) wore a winter jacket with two diagonal zippered pockets along the front, one for each hand. S.K. and K.A. were friends. K.A. approached, said his hands were cold, and asked to put his hands in her jacket pockets. S.K. said no, but K.A. reached his hands into her pockets anyway. Then K.A. began walking backward towards a snowbank a few feet away, pulling S.K. with him by her pockets. As he pulled her, K.A. pressed against S.K. and told her to kiss him or he would throw her in the snowbank. S.K. again said no and tried to remove his hands from her pockets. Then, the trial court found, K.A. tried to get his hands under the waistband of the girl's jeans while his hands were still in her outside coat pockets. S.K.'s belt prevented K.A.'s hands from going down the front of her pants. Ultimately, K.A. did not kiss S.K. or throw her into the snowbank; instead, he pulled her back towards the school, again using his hands in her pockets as leverage. As the two neared the building, a teacher saw them and yelled at K.A. to take his hands out of S.K.'s pockets.

¶ 3. The State subsequently filed a delinquency petition alleging that K.A committed simple assault under 13 V.S.A. § 1023(a)(1) and engaged in a prohibited act, lewdness, under 13 V.S.A. § 2632(a)(8). At the close of the State's evidence, K.A. moved, pursuant to Vermont Rule of Criminal Procedure 29, for judgment of acquittal on both counts due to insufficient evidence, specifically any assaultive act or lewd intent. The trial court granted the judgment of acquittal with regard to simple assault, but not with regard to engaging in lewdness.

¶ 4. After the parties presented their closing arguments, the trial court indicated that it would consider a motion to amend the charge under Vermont Rule of Criminal Procedure 7 from the completed offense of engaging in lewdness to an attempt to do so. The trial court allowed K.A. the opportunity to put on further evidence, which he declined. The State then orally moved

to amend the charge to an attempted lewd act under 13 V.S.A. § 2632(a)(8), which the trial court granted over K.A.'s objection. The trial court entered an adjudication of delinquency on the amended charge of an attempted lewd act, finding that the evidence showed that K.A. attempted to engage in a lewd act by trying to put his hands down S.K.'s pants against her will.

¶ 5. K.A. subsequently filed a motion to reconsider, to which the State objected. K.A.'s motion challenged the court's decision to deny K.A.'s Rule 29 motion for acquittal as to the original charge of a prohibited lewd act, arguing that the court improperly based its denial on the elements of the amended charge—an attempted prohibited lewd act—prior to that amendment actually occurring. The motion also challenged the court's decision to grant the State's oral motion to amend the charge to an attempted lewd act, arguing that the motion was an improper sua sponte motion, that the motion was untimely, and that K.A. was prejudiced by the amendment. The trial court denied K.A.'s motion to reconsider.

¶ 6. On appeal, K.A. raises two claims of error concerning the trial court's delinquency decision. First, K.A. argues the evidence presented at trial was insufficient to support the trial court's conclusion that, beyond a reasonable doubt, K.A. attempted to commit a prohibited lewd act under 13 V.S.A. § 2632(a)(8). Specifically, K.A. raises, for the first time on appeal, three distinct issues relating to the sufficiency of the evidence and specific intent: (1) that the trial court erred by failing to find that K.A. had the specific intent to attempt a lewd act; (2) that the evidence presented at trial was insufficient to support a finding that he acted with specific intent to attempt a lewd act; and (3) that, without a finding of specific intent, § 2632(a)(8) is void for vagueness. Second, K.A. contends the trial court improperly amended the charge from committing a lewd act to attempting to commit a lewd act. The State disagrees with K.A.'s claims and contends that the evidence was sufficient beyond a reasonable doubt to support the trial court's decision and that the trial court did not abuse its discretion when it amended the charge.

3

¶ 7. We hold that the acts charged do not constitute a crime under 13 V.S.A. § 2632(a)(8). In other words, the charge against K.A. fails for insufficient evidence that his actions were an attempt to engage in a lewd act of prostitution. We note that, at trial and in his motion to reconsider, K.A. did not specifically raise concerns about the application of the statute to the acts alleged. As a result, our review is confined to a plain error analysis. V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial right may be noticed although they were not brought to the attention of the court."). Here, plain error occurred that interfered with K.A.'s constitutional right to due process. Cf. State v. Welch, 136 Vt. 442, 444-45, 394 A.2d 1115, 1116 (1978) (declining to reach constitutional claim not raised below because error was not "so grave and serious" as to "strike at the heart of defendant's constitutional rights"). Although the legislative history and text of the statute demonstrate that § 2632 was intended to proscribe "lewd" acts relating to prostitution, the State used the statute to charge this boy for committing a lewd act on a playground. That is an improper result that cannot stand.

¶ 8. Chapter 59 of Title 13 is divided into two subchapters: the first governs "Lewd and Indecent Conduct," the second contains statutes relating to "Prostitution." See 13 V.S.A. ch. 59, sub. chs. 1-2. Section 2632(a)(8) is located in the subchapter governing prostitution and provides that "[a] person shall not: . . . [e]ngage in prostitution, lewdness or assignation." "Lewdness" is defined in § 2631(2) as "open and gross lewdness." This Court has interpreted this clause as lewdness that is "neither disguised nor concealed." State v. Memoli, 2011 VT 15, ¶ 33, 189 Vt. 237, 18 A.3d 567 (quotation omitted).

¶ 9. Criminal statutes must be interpreted and applied to ensure the text provides fair warning of the legal consequences for committing certain, defined acts. See McBoyle v. United States, 283 U.S. 25, 27 (1931) ("[I]t is reasonable that fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed."). The interpretation and application of a statute presents a question of law that

4

the appellate court reviews de novo. State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129. The intent of the Legislature governs the interpretation of criminal statutes and that intent is usually expressed in the statute's plain language. State v. Wainwright, 2013 VT 120, ¶ 6, 195 Vt. 370, 88 A.3d 423 ("As we have repeatedly stated, in interpreting statutes our goal is to implement the intent of the Legislature."). Further, the terms used in the statute should be interpreted on the basis of their ordinary meaning and the context in which they are used. Id. The rules governing the interpretation of statutes also require that statutes be construed to prevent absurd results. In re Jones, 2009 VT 113, ¶ 7, 187 Vt. 1, 989 A.2d 482 ("We interpret penal statutes strictly, but not so strictly as to defeat the legislative purpose in enacting the law or to produce irrational and absurd results." (quotation omitted)).

¶ 10. Here, the meaning of the term "lewd" in § 2632 is murky at best. See § 2631(2) (defining lewdness as "open and gross lewdness"); State v. Roy, 140 Vt. 219, 229, 436 A.2d 1090, 1095 (noting "lewd" may be too vague in certain circumstances). When the language is unclear, the legislative history of the statute should be examined to determine the underlying purpose of the legislation. In re Porter, 2012 VT 97, ¶ 10, 192 Vt. 601, 70 A.3d 915 ("Only if the language is unclear and ambiguous do we resort to legislative history to determine the Legislature's intent."). Moreover, statutes that relate to the same matter are considered to be in pari materia and must be read together as a whole, In re Preseault, 130 Vt. 343, 346, 292 A.2d 832, 834 (1972), as long as the result is consistent with legislative intent. State v. Fuller, 163 Vt. 523, 527, 600 A.2d 302, 305 (1995). To begin, we set forth the legislative history of 13 V.S.A. § 2632.

¶ 11. Almost a century ago, during the Legislature's twenty-fifth biennial session in 1919, an "Act Relating to Prostitution" was enacted. 1919, No. 199, § 1. Section 1 of the Act, entitled "Unlawful Acts," began as follows: "A person shall not occupy any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation and no person

5

shall knowingly permit any place, structure, building or conveyance owned by him or under his control to be used for the purpose of prostitution, lewdness or assignation." Id. The section went on to address transportation of people to engage in prostitution, lewdness, or assignation and procurement of women for the purpose of prostitution, lewdness, or assignation. Id. In § 2 of the Act, "Definitions," the Legislature defined prostitution, lewdness, and assignation. Assignation, which today is understood to be an appointment for a meeting between lovers (a tryst), was specifically defined as "the making of any appointment or engagement for prostitution or lewdness." Id. § 2. "Prostitution," consisted of "receiving of the body for sexual intercourse for hire . . . or for indiscriminate sexual intercourse without hire." Id. The statute defined "lewdness" as "open and gross lewdness." Id.

¶ 12. In the 1933 Public Laws compilation, the Legislature continued the prohibition against prostitution and included the crime under Title 37, Chapter 345, entitled "Offenses Against Chastity and Morality." 1933 P.L. ch. 345. Chapter 345 included a section sentencing a person who commits adultery to five years, § 8600, and one providing that "parties found in bed together, under circumstances affording presumption of an illicit intention," shall be imprisoned for not more than three years. Id. § 8602. Section 8604 outlawed bigamy, and § 8608 outlawed abortion. Section 8618 outlawed "White Slavery," which today can be thought of as sex trafficking. See 13 V.S.A. § 2635.

¶ 13. In Chapter 345, the portion of the law governing prostitution was entitled "Lewdness and Prostitution." See 1933 P.L. §§ 8611-17. The first section of the law, entitled "Penalty," read: "A person guilty of open and gross lewdness and lascivious behavior shall be imprisoned not more than five years or fined not more than three hundred dollars." Id. § 8611 (emphasis added). Section 8612 governed a "Disorderly house or house of ill fame" and read: "A person who keeps a disorderly house, or a house of ill fame, resorted to for the purpose of prostitution and lewdness, . . . shall be imprisoned not more than four years." Id. § 8612. It

6

defined the unlawful acts in the same manner as did the Legislature in 1919: "[O]ccupy[ing] a place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation." Id. § 8614. Definitions are again provided. See id. § 8613. Prostitution is "offering or receiving of the body for sexual intercourse for hire and . . . offering or receiving of the body for indiscriminate sexual intercourse without hire." Id. Assignation was again defined as "the making of an appointment or engagement for prostitution or lewdness." Id. And, it retained the splendidly helpful definition of lewdness as "open and gross lewdness." Id.

¶ 14. The Vermont Statutes of 1947 continued much of the same language found in the 1933 Public Laws. Again, the chapter was entitled "Offenses Against Chastity and Morality." 1947 V.S. ch. 370. It included subchapters prohibiting "Adultery and Bigamy," "Abortion," and "Obscene Books, Pictures, and Shows." Id. But the chapter also included a new crime, entitled "Lewdness, penalty." § 8479. This separate "Lewdness" crime prohibited "lewd or lascivious" acts that were "wilfully and lewdly" committed against a child under sixteen. Id. The definitions of prostitution, lewdness, and assignation found in the statute were the same as those found in the current statute. Compare 1947 V.S. § 8482, subdiv. VI (defining "lewdness" as "open and gross lewdness"), with 13 V.S.A. 2631(2) (same).

¶ 15. In 1949, George Ploof was charged with violating what was by then V.S. § 8483, subdiv. VI: "Procure or solicit or offer to procure or solicit a female person for the purpose of prostitution, lewdness or assignation." State v. Ploof, 116 Vt. 93, 96, 70 A.2d 575, 577 (1950). The State alleged that Ploof "solicited a female person, . . . for the purpose of committing lewd lascivious acts upon the (body of the) [female person]." Id. at 94, 70 A.2d at 576. Ploof demurred to the charge, arguing that it did not set forth the nature of the acts alleged to be lewd and lascivious. The Court wrote:

> The statute does not define with any certainty the crime, and the complaint should set forth the nature of the acts alleged to be 'lewd' and 'lascivious' with such particularity that it will clearly

7

> appear upon the fact of the complaint whether their character is
> such as to come within those terms.

Id. at 96, 70 A.2d at 577. The Court reversed the conviction. The Ploof case is instructive in determining the intentions of the Legislature—that § 8483 was intended to prohibit the procurement or solicitation of a woman for lewdness as understood in the world of prostitution. The case also established the need for a specific description of the lewd act, something the Court found the statute itself did not provide. See also State v. Ryea, 97 Vt. 219, 219, 122 A. 422, 422 (1923) (noting prior law prohibiting "open and gross lewdness . . . does not define the crime with any particularity").

¶ 16. The current law derives from 1947 V.S. ch. 370, and shows an attempt at modernization. Chapter 59 of Title 13 now governs "Lewdness and Prostitution," instead of "Offenses Against Chastity and Morality." 13 V.S.A. ch. 59. And, in response to modern mores, the current chapter eliminates the subchapters criminalizing adultery, abortion, and obscene books, pictures, and shows.

¶ 17. More important, Subchapter 1 of Chapter 59 specifically governing "Lewd and Indecent Conduct," has been separated from Subchapter 2, covering "Prostitution." 13 V.S.A. ch. 59. Within Subchapter 1, § 2601 prohibits lewd and lascivious conduct. Section 2602 governs lewd or lascivious conduct with a child under sixteen.

¶ 18. Then there is Subchapter 2: "Prostitution." It is within this subchapter that we find § 2632, criminalizing "Prohibited Acts." Subchapter 2 begins with a definition section that provides the same definitions of prostitution, assignation, and lewdness that were crafted initially in 1919. Specifically: "As used in this chapter the term 'lewdness' shall be construed to mean open and gross lewdness." 13 V.S.A. § 2631. Apparently, the passage of years has not yielded a more helpful definition of this criminal act.

¶ 19. But the separation of the subchapters and the new title announces the focus of Subchapter 2: Prostitution. See State v. Lynch, 137 Vt. 607, 613, 409 A.2d 1001, 1005 (1979)

8

(noting "caption is relevant in determining the legislative intent"). That Subchapter 2 is intended solely to proscribe acts associated with prostitution is further evidenced by the other sections in that subchapter, including one that limits probation or parole for a person infected with a venereal disease, 13 V.S.A. § 2534; slave trafficking, id. § 2635; and pimping—otherwise known as "appropriating or levying upon earnings of prostitute." Id. § 2637. Distilling the behaviors that society will not tolerate in this manner, and reading the subchapters in pari materia, as parts of one system, the intent of the Legislature is more evident: Subchapter 1 governs lewd behavior, while Subchapter 2 governs prostitution. That understanding is consistent with a legislative history that sought to criminalize "offenses against chastity and morality."

¶ 20.    Our case law provides few interpretations of § 2632. In one such case, State v. George, 157 Vt. 580, 602 A.2d 953 (1991), defendant was charged and convicted of soliciting a female person for the purpose of prostitution pursuant to section 13 V.S.A. § 2632(a)(6). He appealed his conviction claiming his prosecution violated both the Vermont and federal constitution. He argued that the statute discriminated against heterosexual males because it proscribes solicitation only of a female for prostitution by a male. The Court construed the statute and held that the prohibition of § 2632(a)(6) extended to any "person" without regard to gender. Id. at 585-86, 602 A.2d at 956. The Court further noted: "Prostitution by any person, male or female, is prohibited by § 2632(a)(8) and aiding or abetting prostitution . . . is prohibited by § 2632(a)(9)." Id.

¶ 21.    The legislative history and organization of Chapter 59 lead inescapably to the conclusion that Subchapter 2 of Chapter 59 specifically governs the procurement or solicitation of a person for the purpose of prostitution. It follows that § 2632(a)(8) prohibits procuring or soliciting a person for lewd acts relating to prostitution. In this case, it was plain error to charge obnoxious and unwelcome touching on the playground as an act of prostitution.

¶ 22. Only once has this Court addressed community standards and "lewd" conduct in relation to § 2632(a)(8), in In re A.C., 2012 VT 30, 191 Vt. 615, 48 A.3d 595. The procedural history of the case demonstrates that § 2632(a)(8) was used as a catch-all for offenders who are not charged under § 2601 and § 2602. See id. ¶ 5; see also State v. Belanus, 144 Vt. 166, 167, 475 A.2d 227, 227 (1984) (noting State agreed to reduced charge from violation of § 2602 to violation of § 2632(a)(8) in plea deal); State v. Maunsell, 170 Vt. 543, 543-44, 743 A.2d 313, 313 (noting contemplated plea agreement would have reduced defendant's violation from § 2601 to § 2632(a)(8)). In In re A.C., this Court upheld an adjudication of delinquency based on prohibited acts pursuant to § 2632. 2012 VT 30, ¶ 22. In that matter, the State originally brought a delinquency petition charging that A.C. had engaged in open and gross lewdness and lascivious conduct pursuant to § 2601, based on evidence that he slid his hand up the skirt of a classmate and touched her buttocks through her underwear. Id. ¶ 2. The trial court, sua sponte, struck its conclusion that the State had proved lewd and lascivious conduct and instead held that the State had established the misdemeanor of prohibited acts under § 2632. Id. ¶ 5. Both parties acquiesced to the trial court's amended finding, and the issue of the trial court's substitution of a different, lesser charge was not raised on appeal. Id. ¶ 6.

¶ 23. On appeal, A.C. challenged the sufficiency of the evidence under § 2632, but did not allege the statute was vague as applied. Id. The majority imported the standard applied under § 2602, defining "lewd" as depending " 'on the nature and quality of the contact, judged by community standards of morality and decency in light of all the surrounding circumstances, accompanied by the requisite, specific lewd intent on the part of the defendant.' " Id. ¶ 18 (quoting State v. Squiers, 2006 VT 26, ¶ 11, 179 Vt. 388, 896 A.2d 80). As a result of the procedural posture, the majority employed this definition without considering the legislative history of § 2632, the lack of specific intent in the text of § 2632, or the omission of "lascivious" from § 2632. The concurrence, however, recognized that the trial court did not specify what

prohibited act it found supported by the evidence and surmised that the trial court landed on "lewdness" from the section that focused on prostitution, which was, "to put it mildly, a stretch." Id. ¶ 27 (Skoglund, J., concurring).

¶ 24. This case again presents a distorted use of § 2632. Under the facts before us, moreover, there was another charging option; the prosecution could have brought a delinquency petition based on a claimed violation of § 2602, which states, "No person shall willfully and lewdly commit any lewd or lascivious act upon . . . a child under the age of 16 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child." 13 V.S.A. § 3602. It is conceivable that the State thought it too difficult to prove one of the elements of that offense—that of appealing to or gratifying one's sexual desires. See State v. Wiley, 2007 VT 13, ¶ 11, 181 Vt. 300, 917 A.2d 501 ("[L]ewd and lascivious conduct includes the element of appealing to or gratifying one's sexual desires."). With a twelve year old perpetrator, it could be difficult identifying his lusts, passions, or sexual desires. See, e.g., Roper v. Simmons, 543 U.S. 551, 569 (2005) (noting scientific consensus that juvenile conduct is frequently "impetuous and ill-considered" (quotation omitted)). However, the State chose to charge K.A. under an inapplicable statute.

¶ 25. K.A. did not commit a delinquent act of prostitution. The use of § 2632 in this case is an example of prosecutorial discretion gone awry. As noted by the dissent in In re P.M., "Discretion to prosecute persons who have committed crimes is one thing; prosecutorial discretion to decide whether conduct is criminal in the first instance is another. The latter invites arbitrary enforcement and contravenes the separation of powers inherent in our constitutional government." 156 Vt. at 315, 592 A.2d at. 868 (Dooley, J., dissenting).

The judgment of delinquency is reversed.

_____
Associate Justice