NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 86

No. 2019-246

In re A.P., Juvenile

Supreme Court

On Appeal from
Superior Court, Windsor Unit,
Family Division

April Term, 2020

Timothy B. Tomasi, J.

James A. Valente of Costello, Valente & Gentry, P.C., Brattleboro, for Appellant.

David Tartter and James A. Pepper, Deputy State's Attorneys, Montpelier, for Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **COHEN, J.** Juvenile A.P. appeals an adjudication of delinquency based on "open and gross lewdness and lascivious behavior" under 13 V.S.A. § 2601. Juvenile argues that the evidence does not support a finding that his conduct was open or gross. He further argues that § 2601 is ambiguous and therefore unenforceable against him. Finally, he argues that § 2601 is unconstitutionally vague. We affirm.

¶ 2.     The State charged juvenile with lewd and lascivious conduct in violation of 13 V.S.A. § 2601 based on an incident at school. At the time of the incident, juvenile was eighteen

years old and complainant was seventeen years old. The matter was transferred to the family division after juvenile requested to be treated as a youthful offender.

¶ 3. The family division held a merits hearing at which the following evidence was presented. On January 19, 2018, juvenile approached complainant in the hallway of the school. Complainant testified: "[A]ll of a sudden, he asked if he could touch my breasts, and then he just reached out, and his hand was on me." No one else was present, although school was in session. When juvenile touched complainant's breast with his hand, she turned around and ran. She was furious and upset. Juvenile testified that he reached out his hand toward complainant's chest but never touched it. He testified that he regretted disregarding complainant's feelings and felt his actions were "disgusting." The family court found complainant to be credible. It concluded that juvenile had touched her breast and in doing so had committed a delinquent act.

¶ 4. On appeal, juvenile argues that there was insufficient evidence to support the trial court's findings that his conduct was open and gross. He also contends that 13 V.S.A. § 2601 is unenforceable under the rule of lenity and the void-for-vagueness doctrine because it does not provide sufficient notice of what conduct is proscribed. We conclude that the court's findings are supported by the record. We further conclude that the statute unambiguously proscribes the type of conduct at issue here, and accordingly affirm the judgment.

I. Sufficiency of the Evidence

¶ 5. Juvenile first argues that his conduct was neither open nor gross, and therefore is not sufficient to support an adjudication of delinquency under 13 V.S.A. § 2601. That statute states: "A person guilty of open and gross lewdness and lascivious behavior shall be imprisoned not more than five years or fined not more than $300.00, or both." Id. Juvenile does not challenge the trial court's factual findings, but rather argues that those factual findings were insufficient to

2

meet the requirements of the statute. "In assessing the sufficiency of the evidence, this Court will uphold a judgment unless no credible evidence supports it. We review the evidence in the light most favorable to the State." In re A.C., 2012 VT 30, ¶ 19, 191 Vt. 615, 48 A.3d 595 (mem.). We conclude that, viewed in the light most favorable to the State, the conduct was "open" because it occurred in public, and "gross" because it was "patently offensive." See id. ¶ 21.

## A. Openness

¶ 6. Juvenile claims that to be "open" under 13 V.S.A. § 2601, the conduct must have been witnessed by at least one person, not including the complainant. He argues that the original criminal statute addressing lewd and lascivious conduct was intended to protect against public harms, not private harms, and therefore is inapplicable to an act of nonconsensual touching that was witnessed by no one other than the victim. While we agree that the "open" requirement is somewhat unsuited to the statute's more modern usage, we conclude that a school hallway is sufficiently public to meet its requirements.

¶ 7. When it was first codified in Vermont as a statute in 1839, the crime of lewdness was intended primarily to protect public morality. The original statute stated: "If any man or woman, married, or unmarried, shall be guilty of open and gross lewdness and lascivious behavior, every such person shall be punished by imprisonment in the common jail, not more than two years, or by fine not exceeding three hundred dollars." 1839 R.S. 99, § 8. Lewdness appeared in a chapter entitled "Of Offences Against Chastity, Morality and Decency." Id. This chapter criminalized acts that did not conform to the values of the time, particularly those relating to sex. To that end, the chapter proscribed: adultery, defined as married men and unmarried women having "connection," id. § 2; certain persons found in bed together (referring to "any man with another man's wife, or any woman with another woman's husband," id. § 3); persons divorced,

3

cohabitating; polygamy; incest; lewdness; keeping a house of ill fame; importing, printing, selling, or distributing obscene material; blasphemy; defaming courts of justice; cursing and swearing; and disturbing the remains of the dead. See id. §§ 1-15. In large part, these were victimless crimes: a person could be fined five hundred dollars for cohabitating with their ex-spouse or five dollars for swearing profanely. Id. §§ 4, 13. Rape, on the other hand, was listed under Chapter 94, "Of Offences Against the Lives and Persons of Individuals," along with assault with intent to commit rape and other forms of nonconsensual touching. See 1839 R.S. 94, §§ 21-22. By placing "open and gross lewdness" among morality crimes, rather than crimes against individuals, the Legislature appears to have perceived lewdness primarily as an act that offended collective social norms, rather than an act that injured another individual.

¶ 8.    Given this background, defendants have routinely challenged their lewdness convictions on the basis that they were not sufficiently "open," where they did not intend for their conduct to be witnessed by the public. See, e.g., State v. Maunsell, 170 Vt. 543, 544, 743 A.2d 580, 582 (1999) (mem.); State v. Benoit, 158 Vt. 359, 361, 609 A.2d 230, 231 (1992). In fact, openness was an issue in the earliest case applying the statute, State v. Millard, 18 Vt. 574 (1846). In Millard, the defendant arrived at the witness's house, exposed himself, took hold of her, and repeatedly urged her to have sexual intercourse with him. Id. at 574. The defendant argued that his conduct did not constitute open and gross lewdness because it took place mostly in the witness's house and only between himself and the witness. Id. at 576. This Court rejected that theory, holding that "open" meant "undisguised, not concealed," and that "[t]he crime cannot be made to depend on the number of persons, to whom a person thus exposes himself, whether one or many." Id. at 578.

4

¶ 9. We have reaffirmed in recent case law that " 'open' means 'undisguised, not concealed,' and requires no more than one witness." Benoit, 158 Vt. at 361, 609 A.2d at 231 (quoting Millard, 18 Vt. at 578); see also State v. Discola, 2018 VT 7, ¶ 20, 207 Vt. 216, 184 A.3d 1177 ("[C]onduct meets the statutory requirement of 'openness' if it is done in the presence of at least one other witness."); In re A.C., 2012 VT 30, ¶ 21, 191 Vt. 615, 48 A.3d 595 (mem.) (affirming based on trial court's finding "that A.C.'s actions were open in that they were witnessed by [the victim]"). We have not insisted that lewd acts take place in public places to be open. See State v. Penn, 2003 VT 110, ¶¶ 2, 12-13, 176 Vt. 565, 845 A.2d 313 (mem.) (affirming conviction where conduct took place in third party's apartment). Neither have we insisted that more than one person witness the lewd act. See Maunsell, 170 Vt. at 543, 743 A.2d at 582; State v. Ovitt, 148 Vt. 398, 401, 535 A.2d 1272, 1273 (1986); Millard, 18 Vt. at 578. Our case law shows that we have repeatedly embraced a broad definition of "open." While even this broad interpretation has its limits, this case is not too far a stretch.

¶ 10. The act at issue here took place in a public place, a school hallway, during the school day, and was witnessed by complainant. Viewed in the light most favorable to the State, this was enough to render the act "open" under the meaning of the statute, even though no one other than complainant witnessed it. Juvenile's act was no less inappropriate and invasive than it would have been if another person had witnessed the incident. More importantly, the harm caused by juvenile's action—the invasion of complainant's bodily privacy—was not contingent on the number of witnesses to the incident. It was, however, intensified by the public nature of the act. Complainant testified, "I was just having a breakdown. . . . I mean, I just—that just happened in school." Juvenile, too, recognized that the school hallway was an "inappropriate setting" because "[s]chool is supposed to be a safe place, and at that time, I definitely, you know, did not—was not

5

doing my part as a student to make that a safe place." The testimony showed that juvenile's touching of complainant took place in a public setting where there was an expectation of safety, and that the touching was especially offensive as a result. This evidence supports the trial court's finding that the act was "open."

## B. Grossness

¶ 11. Juvenile next argues that his conduct was not "gross" under § 2601 because it was not "patently offensive." In re A.C., 2012 VT 30, ¶ 21. The State agrees that the test for grossness is whether the conduct was patently offensive, but it maintains that juvenile's conduct meets that standard. We agree that the trial court could reasonably conclude that juvenile's conduct was "gross" within the meaning of § 2601.

¶ 12. The statute prohibits only "gross" or patently offensive acts of lewdness—that is, only acts of lewdness that would cause serious offense or harm to a reasonable witness. Id. The offense or harm may arise from, for example, an invasion of an individual's bodily privacy or integrity, or other cognizable interest. The statute does not prohibit arguably "lewd" acts that a reasonable individual would find inoffensive or only mildly offensive—for instance, a suggestive performance, hand gesture, or prank. Context is critical for this inquiry—for example, we have distinguished the unwanted grabbing of a stranger's buttocks from "members of an athletic team encouraging or congratulating one another." Discola, 2018 VT 7, ¶ 22. The same act may be a gross "personal invasion" in one circumstance but wholly inoffensive in another. Id. In short, acts that are open and arguably "lewd," but cause no harm in context, do not fall under the statute's prohibition.

¶ 13. In In re A.C., we considered a case that, like this one, involved nonconsensual touching in a school hallway, and concluded that the conduct was "gross" because it was patently

6

offensive. 2012 VT 30, ¶¶ 20-21. In that case, the defendant approached the complainant outside of a classroom with another classmate, cornered her, and reached up her skirt to touch her buttocks while the other student touched her breasts and vagina through her clothing. Id. ¶ 2. We concluded "that A.C.'s actions were . . . gross because the act of placing A.C.'s hands under A.R.'s skirt and touching her buttocks through her underwear was patently offensive and known to be patently offensive to any law-abiding person in A.C.'s situation." Id. ¶ 21. The conduct in this case—touching a student's breast in a school hallway without her consent—is similar to the conduct in A.C.

¶ 14. We disagree with juvenile that his conduct was not gross because it was merely "[a]n unwanted touch over clothing for approximately one second." Even assuming that groping complainant's breast was not as egregiously intrusive as the conduct in some cases, see, e.g., Benoit, 158 Vt. at 361, 609 A.2d at 231 (holding that conduct of removing all of eleven-year-old's clothing constituted open and gross lewd and lascivious behavior), a reasonable decisionmaker could conclude that the conduct was "patently offensive," and that determination would be consistent with our previous case law. See Discola, 2018 VT 7, ¶ 22 (holding that "unwanted and public grabbing of a victim's buttocks" through clothing can constitute open and gross lewd and lascivious behavior). Indeed, juvenile's conduct—unwanted contact with a sexualized part of complainant's body—could be seen as more offensive than it would have been had he touched only a part of his own body, which we have repeatedly treated as gross lewdness. See, e.g., Maunsell, 170 Vt. at 543-44, 743 A.2d at 582 (holding that massaging genitals over pants in public constituted open and gross lewd and lascivious behavior); Ovitt, 148 Vt. at 404, 535 A.2d at 1275 (same).

¶ 15.    In this case, the trial court found that touching complainant's breast in a school hallway without consent was "gross" lewdness.  In doing so, it relied on the fact that the touching was nonconsensual.  The act of touching complainant's breast without her consent "was patently offensive and known to be patently offensive to any law-abiding person in [defendant's] situation." In re A.C., 2012 VT 30, ¶ 21.  Juvenile has never claimed that he was unaware touching complainant's breast would be offensive.  Based on these facts, the trial court's determination that juvenile's behavior was "gross" was reasonably supported by the evidence.

## II.  Enforceability of 13 V.S.A. § 2601

### A.  Rule of Lenity

¶ 16.    Juvenile argues that it is impossible to distinguish felony "lewdness and lascivious behavior" under § 2601 from misdemeanor "lewdness" under 13 V.S.A. § 2601a.  According to juvenile, the terms of both statutes are ambiguous, and therefore the rule of lenity requires that only the lesser misdemeanor offense can apply to his conduct.

¶ 17.    Our primary goal when interpreting statutes is to implement legislative intent. State v. LaBounty, 2005 VT 124, ¶ 4, 179 Vt. 199, 892 A.2d 203.  "In interpreting a criminal statute, the rule of lenity requires us to resolve any ambiguity in favor of the defendant."  Id.  The rule of lenity does not apply, however, when the statutory language is unambiguous.  State v. Fuller, 168 Vt. 396, 402, 721 A.2d 475, 480 (1998).  Further, "[t]he rule of lenity is not used to narrow a statute that has an unambiguously broad thrust."  United States v. Litchfield, 986 F.2d 21, 22 (2d Cir. 1993).

¶ 18.    Lewdness and lascivious behavior are not defined in §§ 2601 or 2601a, and we have historically declined to give these terms "a precise definition ourselves out of deference to the common sense of the community."  Penn, 2003 VT 110, ¶ 12.  We have explained, however, that

8

"[t]he general proscription against lewd behavior is 'aimed at conduct which, by its openness and notoriety, tends to affront the public conscience and debase the community morality.' " State v. Beaudoin, 2008 VT 133, ¶ 37, 185 Vt. 164, 970 A.2d 39 (quotation omitted). And we have approved of a jury instruction that "lewd and lascivious behavior means behavior that is sexual in nature, lustful, or indecent, that which offends the common social sense of the community, as well as its sense of decency and morality." Penn, 2003 VT 110, ¶ 12 (quotation omitted).

¶ 19. The trial court in this case defined lewdness as "gross and wanton indecency in sexual relationships," and lasciviousness as "tending to excite lust." The court's definitions are in accord with the ordinary meaning of both terms. See Fuller, 168 Vt. at 402, 721 A.2d at 480 ("When a word in a statute is not defined, we are required to give the word its plain and commonly accepted meaning."); see also State v. Blake, 2017 VT 68, ¶ 11, 205 Vt. 265, 174 A.3d 126 (explaining that court may consult dictionaries to determine meaning of undefined statutory term). The primary definition of "lascivious" in Black's Law Dictionary is "tending to excite lust." Lascivious, Black's Law Dictionary (11th ed. 2019). "Lewd" is defined as "[o]bscene or indecent; tending to moral impurity or wantonness," while "lewdness" is defined as "[g]ross, wanton, and public indecency . . . ; a sexual act that the actor knows will likely be observed by someone who will be affronted or alarmed by it." Lewd, lewdness, Black's Law Dictionary (11th ed. 2019). Similarly, Merriam-Webster defines "lascivious" as "filled with or showing sexual desire," and "lewd" as "obscene, vulgar." Lascivious, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/5PWC-LGPY]; lewd, id. [https://perma.cc/Y5H8-SNKU]. Each of these dictionaries lists "lewd" as a cross-reference to "lascivious," but the primary definitions of the words are different.

9

¶ 20.  In sum, the ordinary meaning of lewdness is sexualized behavior that is shocking or repulsive to the community, while lasciviousness connotes sexual desire or lust.  While these definitions are broad and there is some overlap between them, they are not identical and are sufficiently definite to give notice of what behavior is proscribed.[1]  Our previous decisions are consistent with this interpretation of these terms.  See Penn, 2003 VT 110, ¶ 13 (holding that defendant's act of "unbuttoning and unzipping the pants of an unconscious woman" was both "offensive to the community's sense of decency and morality" and "lustful," and therefore was sufficient to support his conviction for lewd and lascivious conduct under § 2601); Millard, 18 Vt. at 577 (holding that defendant's public exposure of himself to female "with a view to excite unchaste feelings and passions in her and to induce her to yield to his wishes" was both lewd and lascivious).

¶ 21.  We therefore disagree with juvenile that § 2601 is ambiguous.  Because the statute clearly applies to juvenile's conduct, which the trial court found to be both indecent and lustful, the rule of lenity does not help him.  See Fuller, 168 Vt. at 402, 721 A.2d at 480 (holding rule of lenity does not apply where statute is unambiguous); Litchfield, 986 F.2d at 22 ("Where statutory and regulatory provisions unambiguously cover the defendant's conduct, the rule does not come into play.").

---

[1]  Section 2602(a)(1) makes it a crime to commit a lewd or lascivious act with a child under the age of sixteen years "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child."  The dissent argues that interpreting lascivious as meaning "tending to excite lust" makes the lascivious element functionally equivalent to the sexual-desires element.  Post, ¶ 58.  We disagree.  The lascivious element describes the nature of the conduct, while the sexual-desires element provides the specific intent required for the offense. See State v. Grenier, 158 Vt. 153, 156, 605 A.2d 853, 855 (1992) (noting that § 2602, unlike § 2601, contains specific-intent element).  Though similar, they are not identical.

¶ 22. Moreover, where potentially applicable criminal statutes have overlapping or identical elements but different penalties, the rule of lenity does not require the State to charge the defendant with the crime carrying the lower penalty. In State v. Shippee, we rejected the argument that the defendant was subject to arbitrary and discriminatory enforcement because he was charged with a felony under § 2601 instead of misdemeanor lewdness under 13 V.S.A. § 2632 for exposing himself and masturbating in front of a child at a department store. We explained that "[w]hen there are overlapping criminal offenses with which a defendant could be charged based on the facts, it is within the prosecutor's discretion to choose among them." Shippee, 2003 VT 106, ¶ 7, 176 Vt. 542, 839 A.2d 566 (mem.). The same is true here: because the facts supported a charge under either statute, the State had discretion to charge juvenile with the felony offense. See State v. Rooney, 2011 VT 14, ¶ 29, 189 Vt. 306, 19 A.3d 92 (holding that State had discretion to charge defendant under either of two statutes that had identical elements but different penalties).

B. Vagueness

¶ 23. Finally, defendant argues that § 2601 is unenforceable because it is unconstitutionally vague. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). "Because First Amendment interests are not implicated here, we must base our examination of the statute on its application to [juvenile] and the facts presented, and not on the statute's possible application to others." Shippee, 2003 VT 106, ¶ 8; see also State v. Cantrell, 151 Vt. 130, 133, 558 A.2d 639, 641 (1989) ("Ordinarily, a party whose particular conduct is adequately described by a criminal statute may not challenge that statute on the ground that the language would not give similar fair

warning with respect to other conduct which might be within its broad and literal ambit, or because it may conceivably be applied unconstitutionally to others in situations not before the Court." (quotations omitted)).

¶ 24.    Juvenile was charged with violating § 2601 because he groped a girl's breast without her consent in a school hallway. As we have found in previous cases raising void-for-vagueness challenges to § 2601, "the statute is sufficiently certain to inform a person of reasonable intelligence that this type of conduct is proscribed." State v. Purvis, 146 Vt. 441-42 443, 505 A.2d 1205, 1206-07 (1985) (rejecting vagueness challenge to § 2601 where defendant knocked on window to attract attention of three young girls walking by his house and exposed himself to them); Shippee, 2003 VT 106, ¶ 8 (holding § 2601 sufficiently certain to proscribe defendant's conduct of exposing himself and masturbating in front of young child at department store); cf. In re P.M., 156 Vt. 303, 308, 592 A.2d 862, 864 (1991) (holding statute prohibiting lewd and lascivious conduct with child was sufficiently certain to prohibit defendant's act of kissing and hugging victim and rubbing his clothed genital area against child's clothed genital area). The average person would understand that the deliberate, unwanted touching of a sexualized area of a person's body for his or her own gratification constitutes lewd and lascivious behavior under § 2601. Cf. Discola, 2018 VT 7, ¶¶ 2, 22 (affirming conviction of lewd and lascivious conduct based on defendant's unwanted and public grabbing of female victim's buttocks). "As far as we can tell, no [United States] Supreme Court decision has ever struck a statute as unconstitutionally vague merely because it uses terms that, at the moment, may not be widely used. . . . [T]he question is whether the term provides a discernable standard when legally construed." United States v. Bronstein, 849 F.3d 1101, 1107-08 (D.C. Cir. 2017) (holding statute prohibiting making "harangue" or "oration" on U.S. Supreme Court property not unconstitutionally vague when

12

properly interpreted); see also Bouie v. City of Columbia, 378 U.S. 347, 355 n.5 (1964) ("The determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants.").

¶ 25. Nor does application of the statute under these circumstances invite arbitrary or discriminatory enforcement. See Purvis, 146 Vt. at 443, 505 A.2d at 1207 (rejecting argument that § 2601 was being applied arbitrarily to punish defendant for mere nudity, where defendant deliberately exposed himself to three young girls and such conduct was lascivious beyond question). Properly limited by the explanations we have provided in case law, the statute creates a sufficiently definite range of prohibited conduct to prevent unbridled prosecutorial discretion. See Commonwealth v. Sefranka, 414 N.E.2d 602, 604, 608 (Mass. 1980) (holding that statute prohibiting being "lewd, wanton, and lascivious person[]  in speech or behavior" did not invite discriminatory enforcement when given limiting construction by court).

¶ 26. We therefore reject defendant's argument that § 2601 is too vague to be enforceable in this case. While the statute is not a paragon of specificity, and could benefit from legislative review, our case law has defined the words open, gross, lewdness, and lascivious with sufficient definiteness that juvenile should have known that groping a girl's breast without her consent in a school hallway constitutes prohibited conduct. As construed in our case law, the statutory terms also circumscribe the compass of prohibited behavior sufficiently to keep the danger of arbitrary and discriminatory enforcement within constitutional bounds. Given the difficulty in specifying the broad range of offensive sexual conduct the law should prohibit, it is possible that "[t]o pull one misshapen stone out of the grotesque structure is more likely simply to upset its present

13

balance between adverse interests than to establish a rational edifice." Michelson v. United States, 335 U.S. 469, 486 (1948).

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 27. **ROBINSON, J., dissenting.** For over 150 years, we have upheld the crime of "open and gross lewdness and lascivious behavior" against repeated vagueness challenges, while simultaneously refusing to define its terms. As a result, 13 V.S.A. § 2601 has become a stand-in to prohibit any wrongful sexual act, with virtually no discernable standard apart from a general appeal to morality. I do not believe that community standards alone can take the place of legislative judgment, and therefore I would hold that § 2601 is void for vagueness.

¶ 28. I begin with the premise that a statute would be unconstitutionally vague if it read, without further clarification: "No person may commit a grossly immoral act." A statute is void for vagueness if it does not provide "fair warning to potential offenders that their conduct is proscribed" or "sufficiently precise standards to avoid arbitrary and discriminatory enforcement." State v. Purvis, 146 Vt. 441, 442, 505 A.2d 1205, 1206-07 (1985). The immoral-act statute's only limiting principle would be whether an act violates the community's sense of morality, leaving prosecutors and courts to decide what acts are acceptable or unacceptable based on majoritarian beliefs or their own moral instincts. Such an undefined, standardless crime would be unconstitutional—even if prosecutors and courts were very good judges of morality, and even if the individual acts they punished under the statute were awful acts that should be subject to criminal sanctions. As the United States Supreme Court has repeated, "It would certainly be

14

dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." Papachristou v. City of Jacksonville, 405 U.S. 156, 165 (1972) (quoting United States v. Reese, 92 U.S. 214, 221 (1875)). In contexts like this, courts have held that "the most meaningful aspect of the vagueness doctrine is not actual notice but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." District of Columbia v. Walters, 319 A.2d 332, 337 (D.C. 1974). Because it defines criminality by reference to morality alone, the immoral-act statute would be "impermissibly vague in all its applications." In re Snyder Grp., Inc., 2020 VT 15, ¶ 27, __ Vt. __, 233 A.3d 1077 (quotation omitted).

¶ 29. Moreover, the immoral-act statute could not be made constitutional by limiting its universe of immoral acts to only "sexual" immoral acts. If the statute read, "No person may commit a grossly immoral sexual act," it would still be "a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application." Napro Dev. Corp. v. Town of Berlin, 135 Vt. 353, 361, 376 A.2d 342, 348 (1977) (quotation omitted). And such a statute would invite the Court to "mandate our own moral code" by applying the statute to any sexual act that members of the court view as wrongful. Lawrence v. Texas, 539 U.S. 558, 571 (2003) (quotation omitted).

¶ 30. At least as historically interpreted by the Court, 13 V.S.A. § 2601 is essentially an immoral-act statute. It encompasses "the universe of conduct that a reasonable trier of fact could consider criminally offensive under community standards of decency and morality." State v. Discola, 2018 VT 7, ¶ 22, 207 Vt. 216, 184 A.3d 1177. I would hold that it is unconstitutionally vague, for three reasons. First, the history of this statute reveals that its definition has expanded

15

beyond its probable original purpose and meaning. Second, the statute as the majority understands it today does not withstand constitutional scrutiny. And third, even if the term "lewd" is not itself ambiguous, § 2601 is unenforceable because it does not distinguish between "lewd" and "lascivious" and therefore does not provide notice to defendants of what conduct rises to the level of a felony.

## I. History

¶ 31. The history of 13 V.S.A. § 2601 reveals that the definition of "open and gross lewdness and lascivious behavior" has broadened over time. It was most likely intended to prohibit public indecency and may have been associated with prostitution. However, in conformance with then-contemporary standards of propriety, we historically refused to define the prohibited behavior with any specificity. Our more recent cases have similarly refused to limit the scope of conduct that falls under the statute and have adopted an extraordinarily broad standard of "openness." As a result, the statute has been used to fill a void in our criminal law by prosecuting a broad range of nonconsensual touching. Today's majority takes the same approach, defining lewdness and lasciviousness in expansive terms that essentially amount to "immoral sexual acts."

¶ 32. Section 2601 was designed to promote morality by prohibiting public indecency. As the majority acknowledges, the crime appeared in a section entitled "Of Offences Against Chastity, Morality and Decency," alongside prohibitions on obscenity, cohabitating with one's ex-spouse after getting divorced, swearing profanely, and publicly denying the existence of God. 1839 R.S. 99 § 8. The term "lewdness" appeared again in the very next section, which prohibited "keep[ing] a house of ill fame, resorted to for the purpose of prostitution or lewdness." Id. § 9. Therefore, it seems likely that the primary behaviors targeted by "open and gross lewdness and lascivious behavior" were public exposure or indecency, possibly in relation to prostitution. See

16

State v. Beaudoin, 2008 VT 133, ¶ 37, 185 Vt. 164, 970 A.2d 39 (describing statute as addressing "conduct which, by its openness and notoriety, tends to affront the public conscience and debase the community morality" (quotation omitted)). But we have never limited the scope of § 2601 to include only the behaviors clearly included in the statute's original meaning. Cf. In re K.A., 2016 VT 52, ¶ 7, 202 Vt. 86, 147 A.3d 81 (limiting "lewdness" in 13 V.S.A. § 2632(a)(8) to " 'lewd' acts related to prostitution"); Commonwealth v. Quinn, 789 N.E.2d 138, 145-46 (Mass. 2003) (interpreting statute prohibiting "open and gross lewdness and lascivious behavior" to "prohibit the intentional exposure of genitalia, buttocks, or female breasts to one or more persons" and setting forth five distinct elements of offense (footnote omitted)).

¶ 33. Instead, in the 1846 case State v. Millard, 18 Vt. 574, we explicitly declined to define what constitutes lewdness and lascivious conduct. We wrote: "No particular definition is given, by the statute, of what constitutes this crime. The indelicacy of the subject forbids it, and does not require of the court to state what particular conduct will constitute the offence." Id. at 577. We concluded that "[t]he common sense of community, as well as the sense of decency, propriety and morality, which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." Id.

¶ 34. This refusal to define sexual behavior was consistent with social mores of the time. As this Court noted, under contemporary standards of morality, the "indelicacy of the subject" forbade describing sexual acts in precise terms. Id.; see also United States v. Roth, 237 F.2d 796, 808 (2d Cir. 1956) (Frank, J., concurring) (describing "dogma of 'Victorian morality' " that demanded " 'decency' in published words"). For that reason, same-sex intimacy had long been described as "a crime not fit to be named." See Bowers v. Hardwick, 478 U.S. 186, 197 (1986) (Burger, C.J., concurring) (quoting 4 W. Blackstone, Commentaries *215), overruled by Lawrence

17

v. Texas, 539 U.S. 558 (2003); see also L.I. Appleman, Oscar Wilde's Long Tail: Framing Sexual Identity in the Law, 70 Md. L. Rev. 985, 998 & n.80 (2011) (noting that contemporary news coverage of Oscar Wilde's 1895 trials for gross indecency "refused to specify what exactly Wilde was being prosecuted for in his second and third trials—a triumph of inspecificity").

¶ 35.    During the same era as Millard, this Court also avoided specific descriptions of "obscene" material, noting that "[i]f the paper is of a character to offend decency, and outrage modesty, it need not be so spread upon the record as to produce that effect."  State v. Brown, 27 Vt. 619, 620 (1855) (upholding indictment for selling obscene publication that stated "printed paper is so lewd and obscene, that the same would be offensive to the court here, and improper to be placed upon the records thereof, wherefore the jurors aforesaid do not set forth the same in this indictment").  Our early refusal to define lewdness was very clearly a product of its time.

¶ 36.    But since then, we have continually refused to define or narrow the scope of lewd and lascivious conduct.  We have recognized that "[t]he statute does not define 'open and gross lewdness and lascivious behavior.' "  Discola, 2018 VT 7, ¶ 20; see also State v. Ryea, 97 Vt. 219, ___, 122 A. 422, 422 (1923) (noting that statute "does not define the crime with any particularity").  And "we have declined to give it a precise definition ourselves out of deference to the common sense of the community."  State v. Penn, 2003 VT 110, ¶ 12, 176 Vt. 565, 845 A.2d 313 (mem.) (adding that "we need not define it with specificity here").  We leave it to the community "and, in turn, the members of the jury, to define open and gross lewd and lascivious conduct in each particular case."  Discola, 2018 VT 7, ¶ 20.

¶ 37.    While we have often identified factors in an individual case that make the conduct "lewd" or "lascivious," each case has ultimately risen or fallen on the basis of its own constellation of facts.  For instance, in Discola we concluded that "unwanted grabbing" of a woman's and a

18

minor's buttocks could be found to "criminally offend community standards of decency," based in part on "the sexual nature of the buttocks," id. ¶ 12, but in State v. Squiers, we held that the meaning of "lewd act" in 13 V.S.A. § 2602—prohibiting lewd or lascivious conduct with a child— was not limited to contact with sexual body parts, 2006 VT 26, ¶ 9, 179 Vt. 388, 896 A.2d 80. Similarly, in State v. Purvis, we held that the defendant's exposure to complainant was lewd and lascivious because he "intentionally drew attention to himself before he exposed himself," which suggested "a view to excite unchaste feelings and passions." 146 Vt. at 443, 505 A.2d at 1207 (quoting Millard, 18 Vt. at 577-78). But in State v. Maunsell, we held that lewdness does not require a specific intent to be seen, 170 Vt. 543, 544, 743 A.2d 580, 582-83 (1999) (mem.), and in State v. Grenier, we held that lewdness and lascivious conduct does not require a specific intent to excite unchaste feelings and passions, 158 Vt. 153, 156, 605 A.2d 853, 855 (1992). Because we review each case on a purely individualized basis, our decisions have not narrowed the definition of lewdness beyond any sexual act that offends community standards.

¶ 38. Although the word "open" could potentially limit the scope of this statute, our expansive interpretation of that term has ensured that it does not. We have held that conduct is considered "open" if it is done in the presence of at least one other witness, and that witness can be the victim. See In re A.C., 2012 VT 30, ¶ 21, 191 Vt. 615, 48 A.3d 595 (mem.). And it can be considered open regardless of whether the act takes place in public. See Penn, 2003 VT 110, ¶¶ 4, 13 (affirming conviction where conduct took place in third party's living room); Grenier, 158 Vt. at 155, 605 A.2d at 854 (affirming conviction where conduct took place in third party's bedroom and where victim was only witness); Millard, 18 Vt. at 578 (affirming conviction where conduct took place on private property and where victim was only witness). Thus, our interpretation of "open" generally only excludes conduct that is witnessed by no other person. Cf. Beaudoin, 2008

VT 133, ¶ 37 (suggesting that consensual private conduct would "not necessarily be subject" to lewdness charge).

¶ 39. Our broad definition of "open and gross lewdness and lascivious behavior" has allowed the State to prosecute acts that the Legislature has not otherwise expressly criminalized, namely nonconsensual touching short of sexual assault.[2]  In fact, punishing nonconsensual touching has become a primary use of the statute, even though the statute is theoretically aimed at conduct that "tends to affront the public conscience and debase the community morality," and was not originally enacted to address invasions of individual privacy or bodily integrity.  Beaudoin, 2008 VT 133, ¶ 37.  We have repeatedly upheld convictions under § 2601 for unwanted touching, on the basis that the underlying conduct is "offensive to the community's sense of decency and morality."  Penn, 2003 VT 110, ¶ 13; see also Discola, 2018 VT 7, ¶ 22; In re A.C., 2012 VT 30, ¶¶ 18-21.

¶ 40. Importantly, the Court's decision today retains the statute's sweeping scope.  It concludes that, in conformance with the dictionary definitions, "the ordinary meaning of lewdness is sexualized behavior that is shocking or repulsive to the community, while lasciviousness connotes sexual desire or lust."  Ante, ¶ 20.  But the majority also makes clear that "lascivious" does not actually require a specific lustful intent—it only "describes the nature of the conduct" in

---

[2] The Legislature, it appears, approves of this use of the statute.  After our decision in In re K.A., 2016 VT 52, ¶ 7, limited 13 V.S.A. § 2632(a)(8)'s prohibition on lewdness to " 'lewd'acts relating to prostitution," the Legislature enacted 13 V.S.A. § 2601a, which added a misdemeanor crime of "open and gross lewdness" in the subchapter addressing "[l]ewd and [i]ndecent" conduct, see 2017, No. 44, § 1 (adding "[p]rohibited conduct" statute).  And the Legislature has used the term lewd and lascivious in statutes that presumably intended to capture nonconsensual touching.  See 13 V.S.A. §§ 1375, 1379 (prohibiting caregivers from engaging in "sexual activity" with vulnerable adults, defined as sexual acts or lewd and lascivious conduct); § 2602 (prohibiting lewd or lascivious conduct with child).  But the Legislature's acquiescence in our broad interpretation of the terms lewd and lascivious does not mean that their expansive scope and ambiguity is constitutional.

a more general sense. Id. ¶ 20 n.1; see also Grenier, 158 Vt. at 156, 605 A.2d at 855 (holding specific lustful intent is not element under § 2601). So—setting aside whether there is any distinction between these two elements, which I discuss below, infra, ¶¶ 55-61—the functional definition of lewdness and lascivious behavior is simply sexual behavior that is offensive to community standards. This is a broader definition than even the Legislature seems to have intended in 1839. It should not be the role of this Court to expand the reach of a crime to fill a gap in the criminal code. See, e.g., Smith v. Parrott, 2003 VT 64, ¶ 14, 175 Vt. 375, 833 A.2d 843 (stating that "decision to expand" liability for medical malpractice was "more properly left to the Legislature").

## II. Vagueness of "Lewdness and Lascivious Behavior"

¶ 41. Community standards alone are an insufficient basis for criminal sanction, and therefore I would find § 2601 unconstitutionally vague. I base this conclusion on three factors. First, the statute as interpreted by this Court provides no meaningful standards apart from morality, and is therefore impermissibly vague in all its applications. Second, other states have rightly criticized and overturned similar statutes. And third, if the Legislature wanted to penalize nonconsensual touching or indecent exposure, it could do so explicitly, as many other states have done.

¶ 42. Like the hypothetical immoral-acts statute, § 2601 provides no meaningful standards apart from morality. Our statutes do not define "lewdness" or "lascivious behavior"—except the statute prohibiting prostitution, which employs "the splendidly helpful definition of lewdness as 'open and gross lewdness.' " In re K.A., 2016 VT 52, ¶ 13 (quoting 13 V.S.A. § 2631(2)). And the majority has defined lewd and lascivious behavior as conduct that is "both indecent and lustful"—or, more expansively, as "sexualized behavior that is shocking or repulsive

21

to the community" and that generally "connotes sexual desire or lust." Ante, ¶¶ 20, 21 & n.1. In doing so, the Court relies on Black's Law Dictionary, which defines "lewd" as "[o]bscene or indecent; tending to moral impurity or wantonness," and "lascivious" as "tending to excite lust; lewd; indecent; obscene," Lascivious, Lewd, Black's Law Dictionary (11th ed. 2019). But these definitions, including the Court's, merely reinforce that "lewd" and "lascivious" are defined only by reference to ambiguous moralistic judgments. "[V]ague statutory language is not rendered more precise by defining it in terms of synonyms of equal or greater uncertainty." Pryor v. Municipal Court, 599 P.2d 636, 642 (Cal. 1979); see also State v. Kueny, 215 N.W.2d 215, 217-18 (Iowa 1974) ("[A]lthough the words 'lewdness' and 'indecent' have often been defined, the very phrases and synonyms through which meaning is purportedly ascribed serve to obscure rather than clarify those terms.").

¶ 43.    Vermont case law supports overturning a statute with sweeping and ambiguous language such as this one. "A statute is void for vagueness when it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." Kimbell v. Hooper, 164 Vt. 80, 88, 665 A.2d 44, 49 (1995) (quotation and alteration omitted). We have reaffirmed that "a legislature [must] establish minimal guidelines to govern law enforcement," because otherwise "a criminal statute may permit a standardless sweep that allows [police officers], prosecutors, and juries to pursue their personal predilections." State v. Berard, 2019 VT 65, ¶ 16, __ Vt. __, 220 A.3d 759 (quotations omitted) (reading statute narrowly to avoid vagueness issue). Section 2601 fits these descriptions: it does not criminalize any particular type of sexual conduct, but merely criminalizes sexual conduct that most people deem criminally offensive.

22

¶ 44. For that reason, I believe this is one of the rare statutes that "is impermissibly vague in all its applications." In re Snyder Grp., 2020 VT 15, ¶ 27 (quotation omitted). We have foreshadowed that "in certain circumstances the words 'lascivious' and 'lewd' might be too vague to be applicable." State v. Roy, 140 Vt. 219, 229, 436 A.2d 1090, 1095 (1981). And we have commented that "the meaning of the term 'lewd' in § 2632 is murky at best." In re K.A., 2016 VT 52, ¶ 10. The murky and self-referential definition of lewdness invites prosecutors and courts to "mandate our own moral code" by applying the statute to any sexual act that could be perceived as wrongful. Lawrence, 539 U.S. at 571 (quotation omitted). The Legislature must define illegal acts, not only by reference to their immorality, but by setting forth the elements that make up the acts themselves. Because § 2601 does not describe any specific acts that are criminal, or meaningful standards for what makes a type of act criminal, all prosecutions for lewdness and lascivious conduct rely almost entirely on the moral judgments of State actors, and ultimately jurors, and it is therefore vague in all applications.

¶ 45. This conclusion is consistent with previous case law in which we noted the danger of a "sprawling doctrine" that would leave too much discretion to the executive and judicial branches. In Napro Development Corp. v. Town of Berlin, 135 Vt. 353, 376 A.2d 342 (1977), we held that a town's authority to abate public nuisances did not include the ability to censor "obscene" materials in the name of decency. The Town board of health determined that an adult bookstore had created an "unhealthful condition" by selling sexually explicit materials, and issued a cease-and-desist order against the bookstore. Id. at 353-54. The Town argued that the board was empowered by statute to abate nuisances affecting the public health, and that obscenity was such a nuisance. Id. at 355-56, 376 A.2d at 345. We declined to read "public nuisance" to encompass obscenity by implication, reasoning that the concept of public nuisance was "vague

23

and amorphous" and that the concept of obscenity was also famously difficult to define. Id. at 356-57, 376 A.2d at 345-46 ("I know it when I see it . . . ." (quoting Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring))). We refused to create a "sprawling doctrine of public nuisance," likening it to a statute that would "sweep[] in a great variety of conduct under a general and indefinite characterization, and leav[e] to the executive and judicial branches too wide a discretion in its application." Id. at 361, 376 A.2d at 348 (quoting Cantwell v. Connecticut, 310 U.S. 296, 308 (1940) (internal quotation marks omitted)). While the present case does not implicate First Amendment protections, as Napro did, Napro supports the principle that we should not permit amorphous statutory language to become a one-size-fits-all vehicle for enforcing community values. See also In re Club 107, 152 Vt. 320, 326, 566 A.2d 966, 969 (1989) (holding that Liquor Control Board could not expand its authority beyond Title 7 to "define and regulate individual conduct that is obscene, lewd, or indecent").

¶ 46. Overturning § 2601 would be in line with decisions from numerous other jurisdictions. In 1974, the District of Columbia Court of Appeals struck down the portion of a statute criminalizing "any other lewd, obscene, or indecent act." Walters, 319 A.2d at 335. The court stated that the statute "betrays the classic defects of vagueness in that it fails to give clear notice of what conduct is forbidden and invests the police with excessive discretion to decide, after the fact, who has violated the law." Id. The court considered whether there was a construction of the statute that would provide sufficient standards, but concluded that the provision was "so lacking in coordinates, other than its apparent application to sexual matters, that inadequate guidance has been given . . . for our development of a remedial formula for a saving construction." Id. at 336. And the court held that the statute was vague as-applied because "the most meaningful aspect of the vagueness doctrine is not actual notice but the other principal element of the

24

doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement. It is in this regard that the statutory language under scrutiny has its most notable deficiencies." Id. at 337 (quoting Smith v. Goguen, 415 U.S. 566, 574 (1974)). In particular, the court concluded that the statute subjects individuals to criminal liability "under a standard so indefinite that police, court and jury are free to react to nothing more than what offends them, and impermissibly delegates to them basic policy matters to be resolved on an ad hoc, after-the-fact basis with the attendant dangers of arbitrary and discriminatory application." Id. (citation omitted).

¶ 47. In Harris v. State, the Supreme Court of Alaska held that the term "crime against nature" was void for vagueness. 457 P.2d 638, 647 (Alaska 1969). The court stated:

> There are many instances in which the law resorts to the general understanding of the community as the standard of legal result. But where the conduct to be prohibited by a criminal statute is capable of objective definition by language descriptive of precise physical acts and events, it simply will not do to use language so ambiguous as to be capable of expansion or contraction at the whim of the reader.
>
> . . . Neither the delicate sensibilities of William Blackstone nor the hushed euphemisms of the Victorian era can justify the use of imprecision in penal legislation. Nor can they govern our determination of whether a statute is valid under current American constitutional standards.

Id. In a later case, Alaska considered a vagueness challenge to a statute criminalizing a "lewd or lascivious act upon or with the body of a child intending to arouse the sexual desires of either the actor or the child." Anderson v. State, 562 P.2d 351, 357 (Alaska 1977) (quotation and alterations omitted). While the court held that the terms "lewd and lascivious" were not vague when viewed in the context of the entire statute, it noted that "the terms 'lewd and lascivious' taken by themselves seem as imprecise as the phrase 'crime against nature.' " Id. at 357.

25

¶ 48.    There are more.  The Iowa Supreme Court struck down a statute prohibiting "open and gross [l]ewdness" and "open and [i]ndecent or [o]bscene exposure of [a] person" in part because those terms "are so indefinite and uncertain that persons of ordinary intelligence are given inadequate notice as to what conduct is thereby prohibited."  Kueny, 215 N.W.2d at 216, 218-19 (quotation omitted).  The Texas Court of Criminal Appeals struck down as impermissibly vague a liquor law prohibiting businesses from "[p]ermitting entertainment, performances, shows, or acts that are lewd or vulgar."  Courtemanche v. State, 507 S.W.2d 545, 547 (Tex. Crim. App. 1974).  The Florida Supreme Court struck down a "crime against nature" statute for vagueness.  Franklin v. State, 257 So.2d 21, 23 (Fla. 1971); see also Campbell v. State, 331 So.2d 289, 290-91 (Fla. 1976) (England, J., concurring) (concurring in judgment that over-clothes touching in gay bar was not open and gross lewdness and lascivious behavior, and noting that "[t]his case re-emphasizes the need for legislative review of the unused, vintage, sex offense statutes which are still in force in this state").  The Eighth Circuit held that the term "indecent or lewd act of behavior" in a Missouri ordinance was unconstitutionally vague.  D.C. v. City of St. Louis, Mo., 795 F.2d 652, 654-55 (8th Cir. 1986).  And the U.S. District Court for the Eastern District of Michigan concluded that the portion of an ordinance referring to "other lewd immoral acts" was unconstitutionally vague because "[t]here are no objective standards to measure whether proposed conduct is 'lewd' " and "[t]he word 'immoral' is subject to the same objections."  Morgan v. City of Detroit, 389 F. Supp. 922, 930 (E.D. Mich. 1975).[3]

---

[3]    Other jurisdictions have rejected similar challenges.  See, e.g., Schwartzmiller v. Gardner, 752 F.2d 1341, 1348-49 (9th Cir. 1984) (upholding statute prohibiting lewd or lascivious conduct with minor); State v. Cota, 408 P.2d 23, 26 (Ariz. 1965) (in banc) (upholding ordinance that prohibited "any lewd or indecent act" against vagueness challenge (quotation omitted));State v. Coleman, 915 P.2d 28, 32 (Idaho Ct. App. 1996) (holding that statute prohibiting lewd or lascivious act upon minor was not void for vagueness); City of Mankato v. Fetchenhier, 363 N.W.2d 76, 79 (Minn. Ct. App. 1985) (upholding statute that prohibited "any open or gross

¶ 49.     Additionally, several states have construed lewdness statutes narrowly, providing the specificity lacking in the term "lewd" in order to satisfy constitutional standards.  For instance, in Quinn, 789 N.E.2d at 146, the Massachusetts Supreme Judicial Court concluded that a statute prohibiting "open and gross lewdness" was unconstitutionally vague as applied to a defendant who had dropped his pants to reveal his bare buttocks and thong underwear in front of a group of school children.  In order to satisfy the constitutional standard of specificity, the court construed the statute to prohibit "the intentional exposure of genitalia, buttocks, or female breasts to one or more persons" done openly in a way such as to produce alarm or shock, and actually producing such alarm or shock.  Id. (footnote omitted).  Similarly, the California Supreme Court construed a statute prohibiting "solicit[ing] anyone to engage in or . . . engag[ing] in Lewd or dissolute conduct" narrowly, holding that "lewd" refers to conduct involving "touching of the genitals, buttocks, or female breast for the purpose of sexual arousal, gratification, annoyance or offense" if the actor knows or should know others are present who may be offended by the conduct and the conduct occurs in a place exposed to public view.  Pryor, 599 P.2d at 647 (quotation omitted).  The court noted that its narrowing definition avoids "vague and far-reaching standards under which the criminality of an act depends upon the moral views of the judge or jury, does not prohibit solicitation of lawful acts, and does not invite discriminatory enforcement."  Id. at 647-48; see also State in Interest of L.G.W., 641 P.2d 127, 131 (Utah 1982) (adopting narrowing definition of "gross lewdness" in Utah statute that tracks California Supreme Court's narrowing definition in Pryor, but adding conduct involving touching the anus).

_____

lewdness or lascivious behavior, or any public indecency" against vagueness challenge (quotation omitted)).

¶ 50. Michigan's line of case law interpreting its gross-indecency law is particularly instructive, because that state initially adopted the "common sense of society" standard from our decision in Millard, 18 Vt. 577. People v. Carey, 187 N.W. 261, 262 (Mich. 1922). In People v. Howell, a plurality of the Michigan Supreme Court noted that for consensual conduct taking place in private, the "common sense of society" test "leaves the trier of fact 'free to decide, without any legally fixed standards, what is prohibited and what is not," and therefore interpreted gross indecency more narrowly to mean "oral and manual sexual acts committed without consent or with a person under the age of consent or any ultimate sexual act committed in public." 238 N.W.2d 148, 151 (Mich. 1976) (quotations omitted). More recently, in People v. Lino, the court splintered as to whether the "common sense of the community" definition was still good law. 527 N.W.2d 434 (Mich. 1994). A majority of justices rejected the common-sense standard, but the majority's memorandum opinion did not affirmatively state what standard did apply. Id. at 436. A separate opinion by Justice Levin argued that the "common sense of the community" definition is unconstitutional because it is "devoid of substantive limitations" and "we cannot allow criminality to depend only upon the moral sentiment or idiosyncrasies of the tribunal before which a defendant is tried." Id. at 444-48 (Levin, J., writing separately) (quotation and alteration omitted). But Justice Levin nevertheless joined the majority decision that the two defendants could be tried under the statute because they should have known that their conduct was prohibited by the statute. Id. at 438-40. Justice Boyle pointed out that Justice Levin's reasoning did not align with the majority's conclusion. Id. at 457 (Boyle, J., concurring and dissenting). She argued that "[t]he Court reads the statute as if the Legislature intended it to be general morals legislation. Specifically, the result of today's decision is that the statute will punish the conduct this Court determines to be immoral." Id. at 451. And Justice Riley, who preferred the "common sense of the community" definition,

28

pointed out that although the majority rejected that definition, it did not offer an alternative. Id. at 458 (Riley, J., concurring and dissenting). This troubled history of disagreement and uncertainty about the meaning of gross indecency—particularly given its roots in our own "standard" for lewd and lascivious conduct—demonstrates how much that standard leaves to be desired.

¶ 51. Finally, if the Legislature wishes to prohibit indecent exposure or unwanted touching, it does not have to rely on such ambiguous language. We are no longer bound to respect the "undesirability of the expression of certain words or thoughts within the chambers of Victorian society . . . . If certain acts of a sexual nature are considered by our Legislature to be objectionable . . . then let such acts be enacted as crimes fully defined in clear, unequivocal language." Barnes v. State, 266 N.E. 617, 619 (Ind. 1971) (Prentice, J., concurring and dissenting). Clearly-defined crimes of nonconsensual sexual touching and indecent exposure are not only possible—they are commonplace.

¶ 52. Numerous states penalize nonconsensual sexual contact short of sexual assault. For instance, New York law prohibits "sexual abuse in the third degree," which includes any nonconsensual "touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." N.Y. Penal Law §§ 130.00(3), 130.55 (McKinney 2010). Massachusetts has a crime called "indecent assault and battery," which has been interpreted as an "intentional, unprivileged and indecent touching of the victim." See Commonwealth v. Kennedy, 90 N.E.3d 722, 728 (Mass. 2018) (quotation omitted); Mass. Gen. Laws ch. 265, § 13H. Maine penalizes "[u]nlawful sexual touching," which includes, among other things, sexual touching to which the other person has not acquiesced and sexual touching where the other person is unconscious. Me. Rev. Stat. Ann. tit. 17-A, § 260(1). And in New Hampshire, sexual assault is

29

punishable as a misdemeanor where the offender subjects the victim to "sexual contact" rather than sexual penetration. N.H. Rev. State. Ann. §§ 632-A:1(IV); 632-A:4(I)(a); 632-A:2.

¶ 53. The same is true for indecent exposure. Numerous states criminalize the exposure of one's genitals in public or where the act is likely to cause distress to another person. See, e.g., 11 R.I. Gen. Laws Ann. § 11-45-2(a) (West 2008); N.Y. Penal Law § 245.01 (McKinney); 18 Pa. Stat. and Cons. Stat. Ann. § 3127. Maine defines "indecent conduct" in several different ways, with carefully differentiated acts and mental elements. Me. Rev. Stat. Ann. tit. 17-A, § 854. Indecent conduct in Maine may be: (A)(1) in a public place, engaging in a sexual act, (A)(2) in a public place, knowingly exposing one's genitals "under circumstances that in fact are likely to cause affront or alarm," (B) in a private place, exposing one's genitals with the intent to be seen from a public or another private place, or (C) in a private place, exposing one's genitals with the intent to "be seen by another person in that private place under circumstances that the actor knows are likely to cause affront or alarm." Id. And Connecticut similarly provides several alternate definitions of the crime "public indecency." Conn. Gen. Stat. § 53a-186. A person is guilty of public indecency in Connecticut when they perform any of the following acts in a public place, defined as a place where the conduct may reasonably be expected to be viewed by others: (1) an "act of sexual intercourse," as defined in another section; (2) a "lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person"; or (3) a "lewd fondling or caress of the body of another person." Id. § 53a-186(a). While the Connecticut legislature used the term "lewd," it used the term alongside a description of the actual behavior that it believed could be criminal if performed in public. If the Vermont Legislature wants to punish the offensive exposure of a person's genitals or nonconsensual touching, it could (and must, in my view) say so in more explicit terms than "open and gross lewdness and lascivious behavior."

30

¶ 54.   In sum, § 2601 does not provide adequate guidelines for police, prosecutors, and courts to determine what conduct is legal or illegal and is therefore unconstitutionally vague in all its applications.  A longstanding custom of broad application of the statute to sanction a wide range of offensive behavior with a sexualized component does not supplant the need for clear statutory guidance or otherwise salvage the vagueness of the statute.

### III.  Failure to Distinguish "Lascivious"

¶ 55.   In addition, § 2601 is void for vagueness because "lascivious" has no discernible meaning distinct from lewdness.[4]  The only difference between the felony offense under § 2601 and the misdemeanor offense under § 2601a is that the felony involves "lewd <u>and lascivious</u> conduct" while the misdemeanor involves only "lewdness."   Therefore, the statute does not provide notice that juvenile's conduct would fall under the felony statute as compared to the misdemeanor statute.  In addition to relying on the absence of meaningful definitions described in more detail above, I base my conclusion on this point on a black-letter maxim of statutory construction, a consideration of the terms lewd and lascivious in the context of the broader statutory scheme, and the incongruity of the definition of lascivious offered by the majority.

---

[4] Juvenile frames this argument regarding lasciviousness as a rule-of-lenity issue, and that is how the majority addresses it.  However, it is more properly addressed as a vagueness issue.  Under the rule of lenity, "we <u>resolve</u> ambiguity in statutory language in favor of the defendant." State v. Brunner, 2014 VT 62, ¶ 11, 196 Vt. 571, 99 A.3d 1019 (emphasis added).  Here, juvenile argues that the ambiguity of "lascivious" cannot be resolved and that the statute is therefore unenforceable, an argument better addressed by our vagueness doctrine.  In any case, the principles underlying the rule of lenity infuse our vagueness analysis, since both doctrines are related to "the fundamental right to adequate notice of what conduct may give rise to criminal punishment."  State v. Rooney, 2011 VT 14, ¶ 57, 189 Vt. 306, 19 A.3d 92 (Johnson, J., dissenting) (discussing rule of lenity); see also State v. Billington, 2020 VT 78, ¶ 19, __ Vt. __, __ A.3d __ (identifying void-for-vagueness doctrine and rule of lenity as "related manifestations of the fair warning requirement"); cf. In re Snyder Group, Inc., 2020 VT 15, ¶ 25 ("Laws and regulations are unconstitutionally vague when they . . . fail to provide sufficient notice for ordinary people to understand what conduct is prohibited . . . ." (quotation omitted)).

¶ 56. Maxims of statutory interpretation tell us that lascivious must have a meaning distinct from lewd. "A fundamental principle of construction assumes that the drafters intended no redundancy." In re PRB Docket No. 2007-046, 2009 VT 115, ¶ 14, 187 Vt. 35, 989 A.2d 523. "We have long presumed that all language in a statute or regulation is inserted for a purpose, and that we must not allow a significant part of a statute to be rendered surplusage or irrelevant." In re Miller, 2009 VT 36, ¶ 14, 185 Vt. 550, 975 A.2d 1226 (quotations and citation omitted). In this case, the felony that juvenile has been convicted of has four statutory components: openness, grossness, lewdness, and lasciviousness. We presume that the latter two terms are not identical.

¶ 57. The structure of Vermont's lewdness-related statutes also supports the notion that "lascivious" has a meaning distinct from "lewd." There are now four statutes in Chapter 59 of Title 13 criminalizing some form of lewd behavior, two of which also reference lascivious behavior. The felony statute at issue here, § 2601, provides for imprisonment for up to five years for "open and gross lewdness and lascivious behavior." With respect to conduct directed at a child, § 2602 prohibits "any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years . . . ." The maximum penalty for a first-time offense is fifteen years. The relatively recently enacted prohibited-conduct statute, § 2601a, penalizes "open and gross lewdness" as a misdemeanor. And § 2632(a)(8), also a misdemeanor, prohibits "lewd acts relating to prostitution," In re K.A., 2016 VT 52, ¶ 21.

¶ 58. The two felony offenses address "lascivious" behavior, while the two misdemeanor offenses penalize certain forms of "lewd" behavior. This statutory structure creates a hierarchy of conduct, where behavior that is lascivious, or which involves a child, is subject to more severe penalties. Consistent with this structure, courts have treated misdemeanor lewdness as a lesser-included offense of lewd and lascivious conduct. Even before the Legislature created a

32

freestanding crime of "prohibited conduct" untethered to the statutes dealing with prostitution, courts treated lewdness as a lesser-included offense of lewd and lascivious behavior. See Id. ¶ 22 (noting that "§ 2632(a)(8) was used as a catch-all for offenders who are not charged under § 2601 and § 2602"); In re A.C., 2012 VT 30, ¶ 5 (noting that trial court, on its own motion, substituted lesser offense of prohibited acts under § 2632(a)(8)). But even though lasciviousness is the feature that elevates conduct from a misdemeanor to a felony within this statutory scheme, our statutes and case law provide no clarity as to what "lascivious" means, or how it is distinct from "lewd."

¶ 59. The majority defines lascivious as "tending to excite lust" or "connot[ing] sexual desire or lust," ante, ¶¶ 19-20, but the statute concerning lewd conduct with children, 13 V.S.A. § 2602, belies that interpretation, see In re G.G., 2019 VT 83, ¶ 10, __ Vt. __, 224 A.3d 494 ("When statutes deal with the same subject matter or have the same objective, we construe them together."). Section 2602 states:

> No person shall willfully and lewdly commit any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 16 years, <u>with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of such person or of such child</u>.

13 V.S.A. § 2602(a)(1) (emphasis added). Under this statute, the State must prove either lewd <u>or</u> lascivious conduct, <u>and</u> must show that the defendant intended to arouse the defendant or child's sexual desires. Under the majority's interpretation of lascivious as "tending to excite lust," this statute would not make sense: should the State choose to charge the defendant with "lascivious," rather than "lewd" conduct, the lasciviousness element would be functionally identical to the sexual-desires element. See State v. Wiley, 2007 VT 13, ¶ 11, 181 Vt. 300, 917 A.2d 501 (holding in prosecution for lewd or lascivious conduct with a child that "lewd and lascivious conduct

33

includes the element of appealing to or gratifying one's sexual desires," and was therefore distinguishable from sexual assault, where "such motive is not an element").

¶ 60. The majority's counterargument on this point leads to even greater problems. The majority states: "The lascivious element describes the nature of the conduct, while the sexual-desires element [in § 2602] provides the specific intent required for the offense." Ante ¶ 20 n.1. But that interpretation leaves us back where we started, with no meaning of lascivious that distinguishes it from lewd. Lustful behavior, without any specific requirement of lustful intent, is functionally the same as "sexualized behavior," which is part of the majority's definition of lewdness. Put another way, the majority points out that Merriam-Webster defines lascivious as "filled with or showing sexual desire," and cross-references "lewd" and "lustful." Lascivious, Merriam-Webster Dictionary [https://perma.cc/5PWC-LGPY]. But if we exclude "sexual desire" and "lustful," because lasciviousness does not require actual intent, the only remaining definition of lascivious is "lewd." Setting aside the difficulties with defining lewd conduct at all, which I have discussed exhaustively, I do not believe that the majority's definitions create a distinguishing principle between § 2601 and § 2601a.

¶ 61. And the meaning of lascivious becomes no clearer in applying the statute to the facts of this case. It is not at all clear why juvenile's unwanted touch over complainant's clothing was not only "lewdness" but also "lascivious behavior." Absent explicit statutory definitions, it is difficult to imagine a case that could meaningfully shed light on the difference between "lewdness" and "lascivious."[5]

---

[5] The majority correctly notes that " '[w]hen there are overlapping criminal offenses with which a defendant could be charged based on the facts, it is within the prosecutor's discretion to choose among them.' " Ante, ¶ 22 (quoting State v. Shippee, 2003 VT 106, ¶ 7, 176 Vt. 542, 839 A.2d 566 (mem.)). But that is only true when the Legislature has demonstrated "unambiguous intent" to allow such discretion. Rooney, 2011 VT 14, ¶ 31. Here, the Legislature's intent is not

¶ 62. Based on my reasoning in Part II, I would overturn § 2601 as void for vagueness. But even if I thought that we could salvage a meaningful definition of "lewd" from these statutes, I do not believe that the word "lascivious" gives us the tools we need to distinguish between felonious lewd and lascivious conduct and misdemeanor lewd conduct.

¶ 63. If the Legislature aims to criminalize unwanted sexual touching, I strongly urge it to enact a statute setting forth the standards and penalties for such conduct, rather than relying on "lewdness" or "lewdness and lascivious behavior" to carry the weight of all offensive sexual conduct short of sexual assault. Both defendants and victims deserve a clear statement of what conduct warrants criminal penalties under the law.

_____
Associate Justice

---

"unambiguous" as to the applicability of § 2601 to juvenile's conduct. It is not even clear what the elements of both crimes (§ 2601 and § 2601a) are or whether they are identical.